**Robert REYES, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AMTEC), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2009.

Decided March 16, 2009.

Larry Pitt, Philadelphia, for petitioner.

Marta J. Guhl, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Robert Reyes (Claimant) appeals an adjudication of the Workers' Compensation Appeal Board (Board) denying him disability compensation and litigation costs. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant failed to prove that his work injury caused his loss of wages and that Claimant was not entitled to costs because he did not prevail on any contested issue. We affirm.

Claimant began working for AMTEC (Employer) in August 2005 as a cable technician, installing and disconnecting cable television service. On April 26, 2006, Claimant was involved in a work-related motor vehicle accident. Claimant filed a claim petition on May 17, 2006, alleging that he sustained injuries in the accident consisting of a compression fracture at T5, headaches, and pain in his low back, middle back, upper back and neck, and that as a result, he was totally disabled as of April 26, 2006, and ongoing. On May 30, 2006, Employer issued a Notice of Compensation Denial (NCD) acknowledging that Claimant sustained a work injury in the accident but disputing Claimant's assertion that he was disabled by his injury.[1] On June 5,

---

1. The NCD is not in the certified record. However, the parties agree that Employer did issue the NCD; that the NCD acknowledged an injury; and that the NCD stated that Claimant's accident was work-related. *See* Claimant's brief at 5 and Employer's brief at

2006, Employer filed an answer to the claim petition denying all allegations.

At the outset of the first hearing before the WCJ, Employer explained that it was not disputing that the Claimant sustained an injury in the automobile accident or that the accident was work-related. Employer did contest the extent of Claimant's disability, specifically the alleged compression fracture, and it did contest Claimant's assertion that his loss of earning power was caused by the accident.

Claimant testified about the accident. He explained that while driving a company vehicle, the brakes stopped working, causing him to swerve off the road to avoid hitting cars that were braking in front of him. Claimant hit a tree and then ran over a trench. He was wearing his seatbelt but "was bobbling around" during the incident. Notes of Testimony, September 12, 2006, at 10 (N.T. ___).[2] The next day, Claimant went to Lancaster General Hospital where he underwent an examination and an x-ray. He was prescribed pain medication. Several months later, Claimant began treating with Norman Stempler, D.O. for back pain. Claimant stated that the pain medication prescribed by Dr. Stempler helps.

Claimant testified that he never returned to work for Employer. According to Claimant, he called Employer from the accident scene to report what had happened and his supervisor fired him over the phone, telling Claimant that he was too much of a liability. Claimant stated that he had been involved in three motor vehicle accidents in the eight-month period he worked for Employer. The week after the accident Claimant met with his supervisor, who then informed Claimant that the accident did not cause his discharge but, rather, his failure to disconnect cable service at three locations as he had reported. Claimant acknowledged that under Employer's policy, a technician could be discharged for failing to disconnect service as directed and admitted that he had failed to do disconnects on at least one or two occasions. However, he denied that this had happened on the day cited by his supervisor.

Claimant testified that he continues to have back problems because it feels like his "spine is pinched forward." N.T., September 12, 2006, at 16. Claimant stated that he could not return to his pre-injury job as a cable technician. It is a very physical job that requires one to wear a tool belt and do considerable lifting, carrying and climbing.

Claimant presented the testimony of Dr. Stempler, a board certified orthopedic surgeon who examined Claimant on June 2, 2006, July 7, 2006, and August 18, 2006. Dr. Stempler diagnosed Claimant with a cervical, thoracic and lumbar strain/sprain and a mild compression fracture of the twelfth thoracic vertebra, all caused by the April 26, 2006, motor vehicle accident. Dr. Stempler opined that from the initial office visit until the last visit, Claimant was unable to perform his pre-injury job, but he could perform sedentary or light-duty work. Dr. Stempler was unaware of any physician removing Claimant from his job prior to Dr. Stempler's recommendation of June 2, 2006.

Employer presented the testimony of S. Ross Noble, M.D., who is board certified in physical medicine and rehabilitation, elec-

---

4. *See also* Notes of Testimony, September 12, 2006, at 5 wherein Employer's counsel explained to the WCJ that Employer had issued an NCD acknowledging the accident but disputing the extent of disability.

2. There is no reproduced record; therefore, all citations will be to the certified record.

trodiagnostic medicine, spinal cord injury medicine, and pain medicine. Dr. Noble performed an independent medical examination (IME) of Claimant on November 1, 2006. Claimant complained of pain in his mid back, but Dr. Noble's examination showed Claimant's neck, mid back and low back to be objectively normal. Claimant reported to Dr. Noble that his pain was worse at the time of the IME than it was after the accident. Dr. Noble explained that increasing pain is not indicative of a traumatic injury; traumatic injuries get better over time, not worse. Dr. Noble opined that Claimant may have sustained a soft tissue injury involving the cervical, thoracic and lumbar areas in the accident, but he was fully recovered by the time of the IME and could perform his regular job. Dr. Noble opined that Claimant was never fully disabled from his work injury and that he could have been working at all points in time. Dr. Noble testified that Claimant's thoracic compression fracture was not related to the accident, and noted that the emergency room physician who saw Claimant the day after the accident shared the same opinion.

Employer presented the testimony of Chad Carter, Claimant's supervisor. Carter testified that he went to the scene of Claimant's accident and that Claimant seemed to be fine. He declined medical treatment. Carter also explained that Employer is a contractor that performs cable installation, disconnection, upgrading or downgrading on behalf of Comcast Cable. Employer assigns technicians, such as Claimant, jobs on written work orders; technicians then submit paperwork to verify completion of a job. Employer then immediately bills Comcast.

Carter denied firing Claimant on the day of the accident. Carter testified that he fired Claimant for submitting "false billing," that was discovered after the accident. N.T., November 7, 2006, at 17. He explained that Claimant had submitted paperwork showing he had completed three disconnects on April 25, 2006, and Employer billed Comcast for that work. Claimant's paperwork was admitted into evidence. However, on April 29, 2006, Comcast complained that it had been falsely billed for the April 25, 2006, disconnects. Carter stated that submitting false paperwork was the worst thing an employee could do because it could cause Comcast Cable, Employer's only customer, to cancel its contract. Comcast discovered through its own quality control review that Claimant's disconnects had not actually been done. Accordingly, Carter fired Claimant. He had no knowledge that Claimant had ever engaged in false billing prior to April 29, 2006. But for Claimant's misconduct, Carter testified, Employer would have accommodated Claimant's limitations, if any, in order to keep him employed after the accident.

■ The WCJ granted Claimant's claim petition for a closed period but only with respect to medical benefits. The WCJ noted that the parties had agreed that Claimant had been in a work-related motor vehicle accident and that the "issue in controversy is the nature of any injury and extent of disability." WCJ Decision, Finding of Fact 1. The WCJ accepted as credible the testimony of Dr. Noble and found that Claimant's work injury was a soft tissue strain and sprain to his neck and back from which he recovered as of the date of the IME.[3] The WCJ also found on the basis of Dr. Noble's testimo-

3. In assessing the evidence, the WCJ is the ultimate fact finder and has complete authority over questions of credibility and evidentiary weight. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa.Cmwlth.2000).

ny, that Claimant's work injury did not render him disabled. The WCJ rejected Dr. Stempler's testimony where it conflicted with that of Dr. Noble. The WCJ rejected Claimant's testimony and accepted Chad Carter's testimony as credible. The WCJ found that "Claimant's disability relates to his termination for cause ... [for] falsifying work orders and billing for work that was not completed." WCJ Decision, Finding of Fact 28. Therefore, the WCJ found that Claimant's loss of earnings as of· April 29, 2006, was caused by Claimant's willful misconduct and not by his work injury.

■ Based on these findings, the WCJ denied disability benefits, and terminated medical benefits as of November 1, 2006. The WCJ also denied Claimant's request for reimbursement of $3,330.55 in litigation costs. Of this total, $3,000 was incurred in taking Dr. Stempler's medical deposition, which took place after the second hearing before the WCJ. The remainder was incurred in obtaining transcripts of deposition and hearing testimony. The WCJ denied costs because Claimant failed to prevail on the issues in controversy in the case, defined as the "nature of Claimant's

injury and extent of disability." WCJ Decision, Finding of Fact 1. Claimant appealed, and the Board affirmed. Claimant then petitioned for this Court's review.[4]

On appeal, Claimant presents two issues for our consideration. First, Claimant argues that the Board erred in denying indemnity benefits because the "credible evidence" supports an award of those benefits. Second, Claimant argues that he is entitled to reimbursement for litigation costs because he was successful, in part, in the proceedings before the WCJ.

■ In Claimant's first issue, he argues that the Board erred in not awarding disability benefits from April 26, 2006, through November 1, 2006, the date of the IME.[5] Claimant contends that Dr. Noble opined that Claimant was limited to light-duty work after the accident. Citing *Brandywine Mazda Suzuki v. Workers' Compensation Appeal Board (Asman)*, 872 A.2d 253 (Pa.Cmwlth.2005), Claimant also asserts that because his misconduct preceded the work injury, Employer was required to show the availability of light-duty work, which it failed to do. According to Claimant, the fact that Employer

**4.** This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

**5.** Employer asserts that although Claimant properly preserved the issue of litigation costs, Claimant has waived any argument pertaining to the denial of disability benefits because he did not plead the issue in his notice of appeal submitted to the Board. Failure to raise issues in the appeal form to the Board can result in waiver. *See Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084, 1089 (Pa.

Cmwlth.1999) (holding that issues are waived when a party merely lists numbers of the findings and conclusions that are alleged to be erroneous and "utterly fail[s] to raise any of the foregoing claims of error with any degree of specificity in its appeal to the Board.") In the instant appeal to the Board, Claimant wrote down the numbers of the WCJ's findings and conclusions of law he challenged, which is inadequate under *Stables*. However, his appeal also stated that "Claimant also requests review of the denial of his wage loss benefits." This is a close case, but we call it in favor of Claimant, particularly where his appeal of the denial of disability lacks merit. Litigants, both claimants and employers, need to be mindful of their responsibility to present appeals to the Board that are specific.

did not become aware of Claimant's misconduct until after the accident does not relieve Employer of its burden to prove job availability.

Employer counters that Claimant is mischaracterizing Dr. Noble's testimony. It notes that there is nothing in the record to establish that any physician restricted Claimant to light-duty work after the April 26, 2006, accident before Dr. Stempler saw Claimant. Further, it is clear from the evidence found credible by the WCJ that Claimant's wage loss was unrelated to his work injury. We agree with Employer.

 The claimant bears the burden of establishing all the necessary elements to support an award of compensation. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 141, 634 A.2d 592, 595 (1993). The claimant must prove that he sustained a work-related injury and that the injury resulted in his disability. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corp. Maple Creek Mine)*, 534 Pa. 191, 194, 626 A.2d 1144, 1146 (1993). Under workers' compensation law, "disability" is synonymous with loss of earning power. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 625, 747 A.2d 850, 854 (2000). Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection. *Mensah v. Workers' Compensation Appeal Board (Norrell Temp Agency)*, 716 A.2d 707, 709 (Pa.Cmwlth.1998).

 If an employer alleges that the claimant's loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of proving

> *that suitable work was available or would have been available* but for the circumstances which merit allocation of the consequences of the discharge to the

claimant, such as the claimant's lack of good faith.

*Second Breath v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892, 900 (Pa.Cmwlth.2002) (emphasis added). The rule is different where pre-injury misconduct causes the discharge. In such a case, the employer must prove job availability for someone with the claimant's injuries. In *Brandywine*, this Court explained:

> ... when a claimant has proven a disabling work injury, *i.e.*, a loss of earnings caused by a work injury, then *pre-injury grounds for firing the claimant cannot act as a superseding cause of a claimant's loss of earnings* and relieve employer of having to show job availability in order to obtain a suspension of benefits.

*Brandywine*, 872 A.2d at 257 (emphasis added).

 First, we reject Claimant's argument that he proved a disability through Dr. Noble's testimony. The WCJ accepted Dr. Noble's opinion for the proposition that the work injury *did not* render Claimant disabled from work. Dr. Noble was asked only whether Claimant was ever fully disabled, to which he responded:

> No. I think he could have been doing work at all points in time. He would have certainly been able to do the lighter elements of his job. I would have allowed him to drive. I would have allowed him to do much of what he described to me, but certainly he was not totally disabled from this injury.

Dr. Noble deposition, January 18, 2007, at 17. This is not an opinion that Claimant was restricted to light-duty work immediately after the accident. Indeed, *Claimant's own attorney* moved to strike Dr. Noble's testimony concerning the time period prior to the IME as speculative. Ironically, Claimant now attempts to rely on that same testimony to argue that

Claimant proved that he could not do his pre-injury job.

Dr. Noble thought Claimant could have done most of his job, and Dr. Noble did not see Claimant until November 1, 2006, over six months after the accident. By that time there was no remaining injury. Claimant offered no evidence that he had been restricted by his injuries from working between the date of his accident on April 26, 2006, and the date of his firing on April 29, 2006. In short, Claimant did not prove that he was ever disabled by his work injury.[6]

■ Second, even if Dr. Noble's testimony could be construed to prove a disability, we reject Claimant's suggestion that Employer would then have had to demonstrate the availability of a light-duty job. Carter credibly testified that he fired Claimant when he learned on April 29, 2006, that Claimant had falsely reported he had performed three disconnects on April 25, 2006. The fact that Claimant's misconduct occurred one day before he was injured is irrelevant because Employer only learned of the misconduct after Claimant was injured and acted immediately. Because Employer fired Claimant as soon as it learned of his misconduct, this case is not governed by *Brandywine*. Carter credibly testified that Employer would have attempted to accommodate any work restrictions Claimant had after the accident, which is all that is required under *Second Breath*, 799 A.2d at 900. In any case, Claimant's *Brandywine* argu-

ment also fails because, as explained above, he never proved a disability, the threshold to a *Brandywine* inquiry.

■ We turn next to Claimant's argument regarding costs. Claimant asserts that he is entitled to an award of litigation costs because he prevailed, in part, in this litigation.

Section 440(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996(a),[7] authorizes an award to a claimant for litigation costs where the claimant prevails in part or in whole. Section 440(a) provides, in relevant part, as follows:

> In any contested case where the insurer has contested liability in whole or in part, ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings....

77 P.S. § 996(a). This Court has consistently held that "a claimant must prevail on the contested issue in order to be awarded litigation costs." *Jones v. Workers' Compensation Appeal Board (Steris Corp.)*, 874 A.2d 717, 721 (Pa.Cmwlth. 2005).

Claimant contends that he prevailed on a contested issue. He argues that the

---

6. Dr. Stempler did not see Claimant until June 2, 2006, and did not offer an opinion of disability prior to that date. Further, Dr. Stempler's opinion of disability was linked to the thoracic compression fracture, which was found not to be work-related. We also reject Claimant's suggestion that the WCJ accepted Dr. Stempler's opinion regarding disability because Dr. Stempler was only rejected where inconsistent with Dr. Noble. As noted,

Dr. Noble did not render an opinion that Claimant was limited to light duty. Further, the WCJ was specifically critical of Dr. Stempler's opinion that Claimant was disabled from performing his pre-injury job. WCJ Decision, Finding of Fact 27b.

7. Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended*.

claim petition proceeding defined his work injury and established his entitlement to medical benefits, albeit for a limited period.

We reject this argument. The WCJ specifically found that the contested issues in this case were "the nature of any injury and extent of disability." WCJ Decision, Finding of Fact 1. Claimant does not challenge this finding. Three weeks after the accident, Claimant filed his claim petition. Employer then issued an NCD acknowledging that an injury occurred, but disputing that Claimant was disabled as a result. The NCD did not dispute medical benefits. Further, Claimant presented no evidence that he had any unpaid medical bills that were incurred for the treatment of his work injuries. At the first hearing before the WCJ and again at the second hearing, Employer reiterated that it acknowledged the occurrence of the motor vehicle accident and that the contested issue was the extent of Claimant's injury and claim for disability. It was subsequent to the second hearing that Claimant deposed Dr. Stempler in support of Claimant's case on the contested issue, *i.e.*, the nature of his injury and disability, and incurred the major cost for which Claimant seeks recovery.[8]

The WCJ found that Claimant's work injuries consisted of a soft tissue strain and sprain to his neck, mid back and low back, which injuries Employer did not dispute. Claimant failed to prove his work injury included headaches and a compression fracture as alleged in his claim petition. Claimant failed to prevail on the

---

8. The dissent ignores the WCJ's finding on what constituted the contested issue and relies, instead, on Employer's answer to the claim petition. The answer consisted of general denials to Claimant's allegations and presented a number of boilerplate affirmative defenses. The dissent believes that "[u]nder the Act," the matter at issue is framed solely by the contents of the claim petition and the answer. Dissent slip op. at 1081. The dissent improperly conflates judicial and administrative proceedings.

Workers' compensation proceedings are recognized to be distinct from civil actions. *East v. Workers' Compensation Appeal Board (USX Corporation/Clairton)*, 574 Pa. 16, 23, 828 A.2d 1016, 1020 (2003). It is axiomatic that "the rules governing pleadings in workmen's compensation cases do not mirror the Pennsylvania Rules of Civil Procedure" and should be applied loosely, not strictly. *Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant Supply Co.)*, 667 A.2d 488, 491 (Pa.Cmwlth.1995). Further, the Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges specifically provide that:

A party has the right to amend a pleading *at any time in a proceeding before a judge*, unless the judge determines that another party has established prejudice as a result of the amendment.

34 Pa.Code § 131.35(a) (emphasis added).

Indeed, in *Ross v. Workers' Compensation Appeal Board (International Paper)*, 859 A.2d 856 (Pa.Cmwlth.2004), this Court held that an employer that failed to raise a statute of limitations defense in its answer did not waive the issue because it was asserted at the pre-trial conference before the WCJ. If an employer is permitted to add defenses not found in its answer, then the converse is also true, *i.e.*, the employer can abandon issues and defenses at the hearing.

In this case, the first order of business decided at the first hearing before the WCJ was to identify the contested issues. At the time of this first hearing, neither party had taken a deposition. Claimant's counsel did not express surprise at the issues identified by Employer, and Claimant did not incur any expense or expend any energy on addressing items stated in Employer's answer that were extraneous to the two issues actually litigated, *i.e.*, whether Claimant's work injury included a vertebra fracture and whether Claimant's loss of earning power was caused by his work injury. Claimant incurred the expense of Dr. Stempler's medical deposition in an effort to prove that he suffered a compression fracture of his vertebra and was disabled by his injury. Claimant lost on those issues.

issue of disability, because the evidence showed his loss of earnings was due to his misconduct, not to the work injury. The WCJ awarded medical benefits but terminated them as of the date of IME. Claimant did not claim that he had any unpaid medical expenses associated with his work injury. As such, both the WCJ and the Board correctly determined that Claimant did not prevail on any issue in dispute and properly denied his request for litigation costs.

Accordingly, we affirm the Board's order.

Judge McGINLEY dissents.

### ORDER

AND NOW, this 16th day of March, 2009, the order of the Workers' Compensation Appeal Board dated March 13, 2008, in the above captioned matter is hereby AFFIRMED.

### DISSENTING OPINION BY Judge PELLEGRINI.

The cost portion of this appeal looks simple, handled by the majority in about a single-typewritten page. Not a lot of money is involved either—about $3,300. But as they say, looks can be deceiving. What really is at issue is when a claimant's attorney is entitled to have costs reimbursed when a claim petition is granted. Because Claimant's claim petition was granted and he prevailed on "matters at issue," Claimant is entitled to litigation costs under Section 440(a) of the Workers' Compensation Act (Act).[1] Accordingly, I respectfully dissent.

On April 26, 2006, Claimant was in a work vehicle when the car left the road and he bumped his head on the ceiling of the car. Though not in the record, Em-

ployer issued a notice of compensation denial acknowledging the accident but disputing disability. "Several days later," Employer fired Claimant for falsely billing customers.

On May 11, 2006, Claimant filed a claim petition alleging that he suffered a compression fracture at T5, low, mid and upper back pain, neck pain and headaches from a motor vehicle accident sustained during the course and scope of his employment as a cable technician on April 26, 2006. Employer answered, essentially denying everything, stating, among other things, that:

1. Claimant's claim is barred under the Statute of Limitations as provided in the Workers' Compensation Act. 2. Claimant's claim is barred under the notice provisions of the Workers' Compensation Act. 3. The medical condition that the claimant suffered was not causally related to his/her work activity. 4. Claimant's claim is barred by res judicata or collateral estoppel. 5. Claimant was not in the course of employment at the time of injury.

Before the WCJ, Norman Stempler, M.D. (Dr. Stempler) opined that Claimant was still unable to work as the date of his last evaluation, which was *August 18, 2006.* Employer's medical expert, S. Ross Noble, M.D. (Dr. Noble) testified that Claimant may have sustained a soft tissue injury but he was fully recovered from any injury as of the date of his exam, *November 1, 2006.*

The WCJ granted the claim petition and ordered Employer to pay Claimant reasonable and necessary medical expenses related to the work injury up until the date of Dr. Noble's exam but denied indemnity benefits because any loss of earning power was due to his misconduct, not to the work-related injury. He denied Claim-

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996(a).

ant's claim for costs of litigation because he failed to prevail on the issues in controversy: wage loss disability related to his work injury and ongoing work-related injury beyond November 1, 2006. Claimant appealed to the Board, which affirmed.

Even though Claimant's claim petition was granted and he was awarded medical benefits, the majority holds that he did not prevail because he did not receive any indemnity benefits because any loss of earning power was due to his misconduct. I disagree with the majority because Claimant's claim petition was granted and he prevailed on other "matters at issue." Therefore, he is entitled to litigation costs.

Section 440(a) of the Act sets forth when a claimant is entitled to litigation costs. It provides, in relevant part:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in **whose favor the matter at issue has been finally determined in whole or in part shall be awarded**, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fees, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer. (Emphasis added.)

At issue, then, is the meaning of to have a "matter at issue" "determined in whole or part" in Claimant's "favor" entitling a claimant to litigation costs.

In answering that question, what first needs to be determined is what is a "matter at issue" in a workers' compensation proceeding. Under the Act, a "matter at issue" is framed by the pleadings. Section 410 of the Act, 77 P.S. § 751, provides that a claimant should file:

> If, after any injury, the employer or his insurer and the employe or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act, the employe or his dependents may present a claim petition for compensation to the department.

Upon receiving a claim petition, Section 416 of the Act, 77 P.S. § 821, requires that the Employer:

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, [he] may file with the department or its workers' compensation judge an answer in the form prescribed by the department.
>
> Every fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him. But the failure of any party or of all of them to deny a fact alleged in any other petition shall not preclude the workers' compensation judge before whom the petition is heard from requiring, of his own motion, proof of such fact. If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.

Under this pleading scheme, then, a "matter at issue" is determined by the claim petition and Employer's answer thereto, nothing else. What goes before is irrelevant because the parties' rights and

duties are determined solely by the outcome of this proceeding.

Next, what has to be determined is what it means to have a "matter at issue" resolved in Claimant's "favor" "in whole or in part." In answering that question, we have held that "[i]n order for a claimant to be awarded litigation costs, the claimant must prevail on the particular issue or petition for which he seeks costs." *Hayduk v. Workers' Compensation Appeal Board (Bemis Co., Inc.)*, 906 A.2d 622, 635 (Pa.Cmwlth.2006). In this case, Claimant prevailed on a particular issue and the petition for which he sought costs.

He was successful on the petition for which he sought costs because the WCJ granted the claim petition, which alone would justify the awarding of costs. He was also awarded payment of medical bills, which if Employer prevailed in the defenses that he was not injured, that the injury was not causally related to his work or that he was not injured within the course of his employment, he would not have received. Moreover, he prevailed on a number of "particular issues" when Employer essentially abandoned almost all of the "matters of issue" raised in its answer, e.g., the claim was barred by the statute of limitations as provided in the Act; barred under the notice provisions of the Workers' Compensation Act; the claim was barred by res judicata or collateral estoppel.[2]

Because the WCJ granted Claimant's claim petition that he suffered a work-related injury which Employer did not concede in its answer and prevailed on other matters placed at issue, I would hold that Claimant is entitled to the litigation costs and award the litigation costs as the WCJ has already determined that amount fair and reasonable. For these reasons, I respectfully dissent.

Judge SMITH–RIBNER joins in this dissenting opinion.

---

**2.** In footnote 14, the majority obfuscates by attempting to turn what is the "matter at issue" within the meaning of Section 440 of the Act into a question of fact rather than a question of law. The majority's obfuscation ignores that the pleadings are required by the Act and are binding on the parties. To hold otherwise makes the pleadings less than nothing. If one party "gives up," that is not an amendment but a concession, necessarily meaning that the other party prevails.