# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julio Pacheco,                                    :
                              Petitioner          :
                                                  :
              v.                                  :      No. 408 C.D. 2020
                                                  :      Submitted:  August 21, 2020
Workers' Compensation Appeal Board                :
(Nordstrom, Inc.),                                :
                              Respondent          :


BEFORE:      HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                              FILED:  March 22, 2021

Julio Pacheco (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) January 10, 2019 Decision on remand (Remand Decision) that held that Claimant was entitled only to a partial reimbursement of litigation costs arising from the WCJ's September 26, 2017 Decision (Initial Decision).  In the Initial Decision, the WCJ granted in part Claimant's Petition to Review Medical Treatment and/or Billing (Review Petition), which sought to correct an alleged incorrect description of Claimant's work-related injury in the Notice of Compensation Payable (NCP). The WCJ modified the NCP's description based solely on the credited testimony of Nordstrom, Inc.'s (Employer) expert witness, rather than the opinions offered by

Claimant's experts, whom the WCJ did not credit.[1]  In the Remand Decision, the WCJ found that Employer was required to reimburse Claimant only for the cost of the copy of the deposition transcript of Employer's expert whose credible testimony was used to expand the description of Claimant's injury.  On appeal, Claimant argues that notwithstanding the WCJ's credibility determinations, he is entitled to the reimbursement of all of his litigation costs pursuant to Section 440(a) of the Workers' Compensation Act[2] (Act) because he succeeded on his Review Petition in part.  After review, we affirm as required by our precedent because the WCJ did not find Claimant's experts credible and, therefore, did not rely on their testimony to expand the description of Claimant's injury and the additional injuries were not disputed by Employer.

## I.  Background

### A. The Petitions

Claimant suffered a work injury on May 7, 2016, when a gate fell and hit his head while working at Employer's fulfillment center.  Initially, this claim was acknowledged by way of a Medical-Only NCP.  Another NCP was issued on June 21, 2016, acknowledging an injury described as a head contusion and indicating that Claimant would be paid temporary indemnity benefits.  After initially receiving treatment at WorkNet, Claimant was released to work with restrictions by James

---

[1] The WCJ's Initial Decision also granted various petitions filed by Employer, including Petitions to Modify and Terminate Claimant's benefits, which the Board affirmed.  Claimant has not challenged the merits of those determinations.  However, because the Initial Decision did not address the issue of litigation costs, the Board remanded the matter to the WCJ to determine what, if any, litigation costs should be awarded.

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a) (providing, in relevant part, that a claimant shall be awarded a reasonable sum for litigation costs in any contested case in which the matter at issue is finally determined, in whole or in part, in the claimant's favor).

Rochester, M.D., on November 15, 2016. A Notice of Ability to Return to work was issued to Claimant, along with Dr. Rochester's restrictions. On that same day, Employer sent Claimant a letter offering him a Bin Maker position that would be within Claimant's work restrictions and requesting that Claimant return to work on November 21, 2016. Claimant did not return to work.

Employer filed a Petition for Modification (Modification Petition) on November 23, 2016, requesting a modification of Claimant's benefits based on Claimant's bad faith refusal to return to work at the light-duty job within Dr. Rochester's restrictions. On December 2, 2016, Claimant responded by filing the Review Petition, claiming that the NCP incorrectly described his work injury. He sought to expand the description of the work injury to include "cervical and lumbar injuries including multiple disc herniations and disc disease, aggravation of right-sided foraminal osteophytic spurring with cervical radiculopathy, concussion and post-concussion syndrome with encephalopathy, vertigo, occipital neuralgia and vestibulopathy." (Initial Decision at 3.)

Also, on December 2, 2016, Claimant attended an independent medical examination (IME) with Todd Samuels, M.D., who opined that Claimant was fully recovered from the head contusion and able to return to work with no restrictions as of that date. Based on this determination, Employer filed a Petition for Termination on December 14, 2016. In addition, Employer sent Claimant a job offer letter, dated December 15, 2016, requesting Claimant return to his full-duty work on December 22, 2016. Claimant did not return. Employer filed a Petition for Suspension (Suspension Petition) on January 17, 2017, asserting that Claimant's benefits should be suspended as a result of Claimant's failure to return to work.

In response to Claimant's asserted additional work injuries, Employer filed a Petition to Compel Independent Medical Examination (Petition to Compel). The WCJ granted the Petition to Compel following a hearing. Claimant attended an IME with Walter Peppelman, M.D., on March 6, 2017.

*B. Proceedings Before the WCJ and the Initial Decision*

In support of its petitions, Employer presented the deposition testimony of Dr. Samuels taken on April 21, 2017, (Certified Record (C.R.), Item 34), Dr. Peppelman taken on May 1, 2017, (*id.*, Item 35), and Dr. Rochester taken on May 10, 2017, (*id.*, Item 36). Dr. Rochester opined that, based on his initial examination of Claimant, Claimant sustained "an abrasion and a contusion to his forehead, cervical spine strain, post-concussive symptoms with left eye visual tracking and near vision convergence deficits." (Initial Decision, Finding of Fact (FOF) ¶ 6.) As of November 15, 2016, Dr. Rochester explained that Claimant was fully recovered from the abrasions and head contusion, had no further symptoms of post-concussive syndrome, but was not fully recovered from the cervical spine strain. (*Id.* ¶¶ 30-32.) Dr. Rochester did not believe Claimant sustained any injuries beyond those identified. (*Id.* ¶ 31.) Dr. Samuels, a board-certified neurologist, opined that Claimant had sustained a work-related concussion but had fully recovered from that injury, as well as the head contusion or any other head or neurological injuries, as of December 2, 2016. (*Id.* ¶¶ 34, 44-46, 51.) Dr. Samuels disagreed that Claimant sustained any of the other neurological injuries claimed in the Review Petition. (*Id.* ¶¶ 45-48.) Finally, Dr. Peppelman, a board-certified orthopedic surgeon, opined that Claimant may have sustained a cervical sprain/strain, but had fully recovered from that injury, as well as the head contusion, by March 6, 2017, the date of the IME. (*Id.* ¶¶ 54, 67, 72.) Dr. Peppelman disagreed that Claimant sustained any additional

4

injuries as a result of the May 7, 2016 work incident and stated that Claimant could return to full-duty work without restriction. (*Id.* ¶¶ 67-70.)[3]

In support of the Review Petition, Claimant testified regarding the May 7, 2016 work incident, his work duties, his ongoing medical treatment, and his ongoing and worsening pain in his neck, shoulders, mid and low back, and right leg. (*Id.* ¶¶ 120-27, 135, 139.) He did not think he could do even the light-duty Bin Maker position. (*Id.* ¶ 137.) Claimant also offered the deposition testimonies of Bruce L. Grossinger, D.O., taken on May 26, 2017, (C.R., Items 26-27), and Louis Marotti, Jr., M.D., taken on June 5, 2017, (*id.*, Item 25). It is the costs of these depositions which Claimant seeks to recover in the present matter. Dr. Grossinger, who is board certified in neurology, opined that Claimant sustained additional work-related injuries, including cervical radiculopathy, an aggravation of osteophytes and degenerative disc disease, two herniated discs, concussion with post-traumatic encephalopathy and retrograde amnesia, vertigo with vestibulopathy, and cervical, thoracic, and lumbar injuries. (FOF ¶¶ 75, 80, 82, 84.) Dr. Grossinger indicated Claimant is totally disabled by these injuries. (*Id.* ¶ 86.) Dr. Marotti, a board-certified neurosurgeon, opined that the work incident aggravated Claimant's underlying degenerative spondylosis and lumbar conditions, Claimant required neck surgery, and Claimant was totally disabled from his time-of-injury position by these injuries. (*Id.* ¶¶ 94, 99, 101-02, 104.)

Relevantly, the WCJ found credible and convincing Dr. Rochester's testimony "that [] Claimant suffered a concussion and cervical strain as a result of

---

[3] Employer also presented the testimony of Daniel Donohue, its Safety Manager, who explained the Bin Maker position and Employer's job offers to Claimant. Mr. Donohue further explained that Claimant's position continued to be available on an ongoing basis at the same hours and wages. (FOF ¶¶ 111-18.)

5

the work injury of May 7, 2016," "was fully recovered from any contusion to the head and . . . did not have any post-concussive symptoms as of . . . November 15, 2016," and, as of that date, "could work in a sedentary-duty position." (*Id.* ¶ 147.) The WCJ also was persuaded by Dr. Samuels' testimony that "Claimant was fully recovered from any and all neurological injuries," that there was no ongoing symptomology relating to a concussion and head contusion as of December 2, 2016, and that no additional injuries should be added to the NCP as being work-related. (*Id.* ¶ 151.) The WCJ further credited Dr. Peppelman's testimony that Claimant was fully recovered from the cervical sprain/strain and did not suffer any other orthopedic injuries. The WCJ expressly rejected the opinions of Dr. Grossinger and Dr. Marotti, as well as Claimant's testimony that he continued to be disabled and suffer any symptoms from the injuries of May 7, 2016, as not credible or convincing.

Given these findings, the WCJ concluded "that the only injury sustained by . . . Claimant on May 7, 2016, besides the acknowledged head contusion, is a concussion and cervical strain/sprain. Any other injuries alleged by . . . Claimant in his [Review] Petition . . . are found to be not work-related." (*Id.* ¶ 158.) Thus, the WCJ granted Claimant's Review Petition in part and added the injuries of a cervical strain and a concussion to the NCP. However, because the WCJ accepted Dr. Rochester's and Dr. Samuels' opinions that Claimant was fully recovered from the concussion, head contusion, and cervical sprain/strain, the WCJ granted the Termination Petition and terminated Claimant's benefits as of December 2, 2016, and dismissed as moot the Suspension Petition. The WCJ further granted the Modification Petition, modifying Claimant's benefits as of November 21, 2016, due to his failure to make a good faith attempt to return to work at a position that was within Dr. Rochester's restrictions.

*C. Appeal to the Board and Remand Determinations*

Claimant appealed the WCJ's Initial Decision. The Board rejected the majority of Claimant's arguments as merely disagreeing with the WCJ's credibility determinations, which were beyond the Board's review. However, Claimant had also argued that he was entitled to the payment of Dr. Grossinger's and Dr. Marotti's deposition fees, as they were litigation costs and he prevailed, at least in part, on the Review Petition. Because the WCJ had not addressed the issue of litigation costs, the Board remanded the matter to the WCJ to examine the record and issue an amended decision with additional findings of fact as needed to determine whether Claimant was entitled to the payment of any litigation costs that were "arguably[] attributable to points on which Claimant did prevail in the present matter." (Board Aug. 16, 2018 Op. at 13.)

On remand, the WCJ restated the credibility determinations he had made in the Initial Decision. (Remand Decision, FOF ¶ 7.) The WCJ explained that the Initial Decision was not favorable to Claimant, in that his medical and wage loss benefits were terminated. However, with regard to the Review Petition, the WCJ held that while the description of the injuries had been expanded for a temporary period, "it was the testimony of [Employer's] expert, Dr. Rochester, and not either of [] Claimant's experts, that was found credible." (*Id.* at 4.) The WCJ explained that he had rejected "each and every diagnosis" of Dr. Grossinger and Dr. Marotti as not credible. (*Id.*) Accordingly, the WCJ held that "[a]lthough Claimant technically prevailed on the Review Petition, it was not because of any testimony offered by either Dr. Grossinger or Dr. Marotti. As such, the only cost that would be associated for the amended description of injury would be [the] transcript costs of Dr. Rochester," which would be reimbursable if Claimant established that he paid those costs. (*Id.* at 4-5.)

7

Claimant appealed the Remand Decision to the Board, arguing that his right to recover litigation costs was not dependent on which expert the WCJ found credible or relied upon in reaching his determination. Claimant contended that Employer had refused to correct the NCP, despite knowing that additional injuries existed, and he had to present "legally and statutorily required medical testimony/evidence in support of his successful Review Petition." (Board Feb. 2, 2020 Op. at 11.) The Board disagreed, holding that Claimant was only entitled to reasonable litigation costs, and for the costs to be reasonable, the WCJ must determine "the extent to which they relate to the 'matter at issue.'" (*Id.* at 13.) Therefore, the Board held, "a claimant must prevail with respect to the particular issue to which a given litigation cost applies in order to be entitled to reimbursement for it." (*Id.*) Because the WCJ found that Dr. Rochester's opinion was the only evidence that "had any bearing on Claimant's success on his Review Petition," the Board determined that this "transcript was the only cost that Claimant may have incurred that was reasonably essential." (*Id.* at 13-14.) As the Board found it was bound by the WCJ's judgment as to the credibility and reliability of the evidence and what litigation costs were reasonably essential, it affirmed the WCJ's Remand Decision. Claimant now petitions this Court for review.[4]

---

[4] "This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated." *Peters Twp. Sch. Dist. v. Workers' Comp. Appeal Bd. (Anthony)*, 945 A.2d 805, 810 n.8 (Pa. Cmwlth. 2008). "Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support the conclusion." *Wells-Moore v. Workmen's Comp. Appeal Bd. (McNeil Consumer Prods. Co.)*, 601 A.2d 879, 881 (Pa. Cmwlth. 1992). "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses," but to "determine whether, upon consideration of the evidence as a whole, the [WCJ's] findings have the requisite measure of support in the record." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992).

8

## II. Parties' Arguments

Claimant argues that the Board erred as a matter of law when it affirmed the WCJ's refusal to award any of the costs associated with Dr. Grossinger's and Dr. Marotti's depositions and that the plain language of Section 440(a) mandates he be awarded all of his litigation costs associated with the Review Petition. Claimant asserts that because he was required to introduce medical evidence to support his position that his injury description was incorrect, Section 440(a) "commands reimbursement of litigation costs when a [c]laimant is successful even in part." (Claimant's Brief (Br.) at 8.) "To deny these costs after Claimant successfully petitions to expand the description of injury[,]" Claimant submits, "is to misinterpret and distort the plain language of Section 440[(a)][] and runs contrary to the humanitarian purposes of the . . . Act." (*Id.*)

Relying on *Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles)*, 528 A.2d 1020, 1023 (Pa. Cmwlth. 1987), Claimant argues that this Court has "settled the point that costs incurred for [deposition transcripts], when they are actually used in the case, are reimbursable," and that "the expense of deposition transcripts is reimbursable when necessary for presentation of the case." (Claimant's Br. at 10.) Additionally, Claimant asserts that under *Boddie v. Workers' Compensation Appeal Board (Crown Distribution Center)*, 125 A.3d 84, 92 (Pa. Cmwlth. 2015), where a claimant pays for a medical expert's deposition whose testimony is needed to prove that the claimant sustained a work injury, that cost is reimbursable upon a favorable decision on that issue. Claimant argues that this Court should adopt the dissenting opinion in *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071 (Pa. Cmwlth. 2009) (Pellegrini, J., dissenting), which Claimant asserts supports his argument that where a claimant has

9

the burden to prove an injury and is thus statutorily required to incur the cost of any medical deposition in support thereof, "[i]t does not matter that the WCJ only relied upon the testimony of one of Employer's experts . . . ."  (Claimant's Br. at 18.) Claimant posits that although *Boddie* and *Reyes* concerned claim petitions, as compared to the Review Petition considered here, his burden to submit evidence to establish the extent of his work injury is the same, and this Court should find that the granting of the Review Petition alone justifies the award of costs.

Finally, Claimant asserts that, in using the word "shall," Section 440(a)'s plain language restricts the WCJ's discretion in awarding costs to determining the reasonableness of the cost, not whether costs are generally reimbursable.  He asserts that payment of costs under Section 440(a) is to deter unreasonable contests by employers and that section's provisions should be interpreted in his favor. (Claimant's Br. at 9 (citing *Papernik v. Workmen's Comp. Appeal Bd. (U.S. Steel Corp.)*, 399 A.2d 1205 (Pa. Cmwlth. 1979)).)  Because Claimant was successful in expanding the description of his injury, Claimant argues he was entitled to the full costs associated with proving this expanded injury.

Employer responds "that in order for litigation costs to be considered reasonable, and thus reimbursable, they must relate to the 'matter at issue' on which Claimant prevailed."  (Employer's Br. at 27 (quoting *Barrett v. Workers' Comp. Appeal Bd. (Sunoco, Inc.)*, 987 A.2d 1280, 1289 (Pa. Cmwlth. 2010), *overruled on other grounds by Crocker v. Workers' Comp. Appeal Bd. (Ga. Pac. LLC)*, 225 A.3d 1201 (Pa. 2020)) (internal quotation marks omitted).)  Relying on *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 58 (Pa. Cmwlth. 2011), Employer argues that where a WCJ rejects a claimant's expert's testimony in whole and thus does not rely on that testimony in rendering a decision,

the costs associated with that expert's testimony do not relate to the matter at issue on which a claimant is successful. Therefore, such costs, Employer maintains, are not reasonable or reimbursable under Section 440(a). As such, "Claimant did not affirmatively establish that the costs he sought were necessary to litigate his Review Petition[,]" as "[t]he testimony of Claimant's experts was rejected as not credible" and "did not even support the addition of a cervical strain, as neither even mentioned the word 'strain' or 'sprain' in their depositions, much less testified that Claimant suffered a cervical strain as a result of the work incident." (Employer's Br. at 30-31.) Additionally, Employer asserts that Section 440(a) does not authorize awards for costs just because a claimant has the burden of proof, especially where the evidence presented by the claimant has been wholly rejected as not credible and not reliable. Thus, as to the expansion of Claimant's injury to include a concussion and a cervical sprain, it was Employer's medical witness who "volunteered this diagnosis on direct examination[,]" and Claimant is not entitled to reimbursement of the costs of his experts' testimony. (*Id.* at 36.)

Furthermore, Employer argues that *Boddie* is distinguishable because this Court's reversal of the denial of litigation costs related to the claimant's expert in that case was based on the employer's ultimate acceptance of some of the claimed work injuries mere minutes before the deposition and that the deposition addressed an injury that was unaddressed by the WCJ and, therefore, required a remand. Here, Employer submits that, unlike in *Boddie*, Claimant's injury was immediately recognized by Employer, benefits were immediately paid, Claimant was not required to file a claim petition but sought to expand the injury, and the WCJ addressed all of the outstanding injuries and rejected all of Claimant's evidence in doing so. Employer asserts that the real focus of the Review Petition was the severe and

11

disabling injuries on which Claimant was unsuccessful, not the concussion and cervical strain that were added and to which Claimant's experts did not testify.

In addition, Employer maintains that the majority opinion in *Reyes* supports the denial of Claimant's litigation costs and that the Court should decline to adopt the dissenting position. Employer contends that case law is clear that a claimant must prevail on a disputed or "contested" issue to which the claimant's expert's testimony was attributable in order to recover costs therefor. (*Id.* at 41-42.) Employer argues that Claimant cannot show that Dr. Grossinger's or Dr. Marotti's testimony was reasonably necessary or was actually used to expand his injury to include a concussion and a cervical sprain, as it was only Dr. Rochester's testimony that was relied upon to partially grant the Review Petition. Finally, Employer contends that Section 440(a) does not require "unlimited recovery of litigation costs" but only recovery of "reasonable" costs, the Act's use of "shall" does not mandate an award of every single cost incurred by Claimant, and the WCJ did not err in denying the requested litigation costs as unreasonable. (Employer's Br. at 44-45.)

## III. Discussion

The issue before the Court is whether the WCJ erred in limiting the amount of litigation costs awarded to Claimant to only the cost of a copy of the deposition transcript for Dr. Rochester. The award of reasonable litigation costs in workers' compensation matters is governed by Section 440(a), which, in relevant part, states:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate . . . or modify compensation awards [or] . . . agreements . . . , the employee . . . **in whose favor the matter at issue has been finally determined in whole or in part shall** be awarded, in addition to the award for compensation, a **reasonable sum for costs incurred** for attorney's fee,

12

witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings . . . .

77 P.S. § 996(a) (emphasis added). "In order for litigation costs to be considered reasonable, and thus reimbursable under Section 440(a), they must relate to the matter at issue on which [the c]laimant prevailed." *O'Neill*, 29 A.3d at 58 (quoting *Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 874 A.2d 717, 722 (Pa. Cmwlth. 2005)) (quotations omitted). The issue on which the claimant prevailed must have been a "contested issue in order to be awarded litigation costs." *Jones*, 874 A.2d at 721. The determination of whether litigation costs are reasonable and reimbursable is left to the WCJ's discretion. *Id.* at 721 n.3, 722.

In *O'Neill*, a claimant challenged a WCJ's decision not to award fees associated with a medical expert's deposition, which the claimant argued was pertinent to her success on her review petition. At issue was the claimant's argument that she was entitled to be reimbursed for mileage expenses accrued in obtaining medical treatment. In awarding those mileage expenses, the WCJ relied solely on the claimant's own testimony and not that of the medical expert. On appeal, we affirmed, explaining that "[t]here [wa]s nothing within the WCJ's [d]ecision on the issue of [the c]laimant's travel expenses that relie[d] upon any testimony of [the medical expert]; in fact, there is no testimony offered by [the medical expert] in these entire proceedings that was found credible or concomitantly accepted by the WCJ." *O'Neill*, 29 A.3d at 59-60. Therefore, this Court held that because the "[c]laimant's testimony [wa]s unmistakably the sole basis for the WCJ's award of travel reimbursement costs, [the medical expert's] unaccepted and/or rejected deposition testimony [wa]s not related to the matter at issue on which [the c]laimant prevailed, and thus the litigation costs associated therewith are not reimbursable under Section 440(a)." *Id.* at 60. Under this rationale, where a favorable decision is based **solely**

13

on evidence that is unrelated to the testimony of a claimant's medical expert, which was rejected as not credible, it is not an abuse of discretion for a WCJ to conclude that the cost of that medical expert's deposition is not related to the matter at issue and, therefore, is not reimbursable under Section 440(a).

In *Reyes*, this Court focused on whether the claimant prevailed on any issues that had been contested by the employer to determine whether litigation costs should be awarded under Section 440(a). In that case, the claimant sustained injuries in a work-related automobile accident and, while the employer initially had denied all of the allegations, it explained at the first hearing that it was disputing one particular injury and that the claimant's loss of earnings was related to the accident. The WCJ rejected the claimant's expert's testimony, credited the employer's expert's testimony, and granted the claim petition but awarded only medical benefits for some of the alleged injuries for a closed period. The WCJ denied the claimant's request for reimbursement of the cost of his expert's deposition because the claimant had "failed to prevail on the issues in controversy in the case." *Reyes*, 967 A.2d at 1076. On appeal, we rejected the claimant's argument that he had prevailed on a contested issue because the issues on which he had prevailed, a more-limited description of his work injury and the payment of medical benefits for a closed period of time, were not disputed by the employer, particularly where there was no evidence that there were unpaid medical bills. *Id.* at 1079-80. Having not prevailed on a disputed issue, we held the denial of the claimant's litigation costs was proper. *Id.*; *see also Quinn v. Workers' Comp. Appeal Bd. (McGrath Tech. Staffing Inc.)* (Pa. Cmwlth., No. 618 C.D. 2017, filed Jan. 26, 2018) (rejecting a claim for litigation costs based on the claimant's argument that she prevailed in part because the WCJ implicitly amended the description of the injury in the NCP by crediting the

14

employer's experts who indicated that the claimant sustained additional injuries, where those additional injuries were not contested by the employer and, therefore, were not contested issues).[5]

In the present case, while Claimant was partially successful in his Review Petition, we discern no legal error or abuse of discretion in the WCJ's conclusion that the costs associated with deposing Dr. Grossinger and Dr. Marotti were not reimbursable under Section 440(a). The WCJ explicitly found both Dr. Grossinger's and Dr. Marotti's diagnoses of Claimant's injuries to be neither credible nor reliable. Such credibility decisions are beyond this Court's review. *Reyes*, 967 A.2d at 1075 n.3. Rather, in granting Claimant's Review Petition to expand the nature of Claimant's injury to include a cervical strain and concussion, the WCJ relied **solely** on Dr. Rochester's testimony. Just as in *O'Neill*, Dr. Rochester's testimony was "unmistakably the sole basis" for Claimant's partial success in expanding the nature of his injury, and "[t]here is nothing within the WCJ's Decision on the issue of [the nature of] Claimant's [work-related injury] that relies upon any testimony of" Dr. Grossinger or Dr. Marotti. 29 A.3d at 59-60. Therefore, as "there is no testimony offered by [Dr. Grossinger or Dr. Marotti] in these entire proceedings that was found credible or concomitantly accepted by the WCJ," Dr. Grossinger's and Dr. Marotti's "unaccepted and/or rejected deposition testimony is not related to the matter at issue on which Claimant prevailed, and thus the litigation costs associated therewith are not reimbursable under Section 440(a)." *Id*. at 60. As *O'Neill* is analogous to the case presented here, it is binding on this Court in this matter.

---

[5] Although not binding, an unreported opinion of this Court may be cited as persuasive pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Further, similar to *Reyes*, while Employer here did not officially recognize the concussion and cervical spine sprain, Employer **did not dispute** those injuries, the medical treatment Claimant received for those injuries, or Claimant's wage losses related to those injuries. When Claimant was injured in May 2016, Claimant received medical treatment and wage loss benefits from Employer, and Claimant does "not claim that he had any unpaid medical expenses associated with" those undisputed injuries. *Reyes*, 967 A.2d at 1080. As such, under our precedent, those injuries cannot be said to be an issue in dispute on which Claimant prevailed in order to receive litigation costs under Section 440(a). Rather, the real issue in dispute was the numerous other injuries that Claimant sought to add to the NCP, which his experts opined were caused by the work incident and rendered him totally disabled. Because those opinions were not credited, "Claimant did not prevail on any issue in dispute and [the WCJ] properly denied his request for litigation costs." *Reyes*, 967 A.2d at 1080. Although Claimant asks this Court to adopt the dissenting opinion's reasoning in *Reyes*, that reasoning did not reflect the position of the majority of the Court and would necessitate that this Court reverse *Reyes*. Claimant has not proffered a compelling basis for the Court to do so.

Claimant relies on *Boeing Vertol* and *Boddie*. However, as Employer argues, *Boeing Vertol* indicates that costs are reimbursable "when they are **actually used** in the case" and "when **necessary** for presentation of the case." 528 A.2d at 1023 (emphasis added). Although Claimant presented the depositions of Dr. Grossinger and Dr. Marotti to expand his injuries to those beyond a head contusion, concussion, and cervical spine strain, those uncredited depositions were not necessary to or actually used by the WCJ to grant the Review Petition. Claimant had the burden to prove additional injuries, and that burden was met not through the testimony of

16

Claimant's experts, but **solely** through Dr. Rochester's opinion that Claimant suffered a concussion and cervical strain. That was the only deposition used and necessary to the partial grant of the Review Petition.

In addition, because Dr. Grossinger's and Dr. Marotti's opinions were wholly rejected and their depositions were not used or necessary for the issue on which Claimant prevailed, this matter is distinguishable from *Boddie*. In that case, the medical expert whose deposition fee was sought specifically testified to "an issue that was being **contested** [(certain lumbar injuries)] and upon which [the c]laimant **prevailed**" because the employer issued an NCP accepting those injuries just minutes before the deposition was taken. *Boddie*, 125 A.3d at 92 (emphasis added). Conversely, Claimant did not prevail on expanding his injuries to include additional diagnoses beyond a concussion and cervical strain, which Employer never disputed or for which Employer never denied payment of either medical treatment or wage loss benefits. In fact, Employer offered Claimant a modified duty position consistent with the restrictions Dr. Rochester imposed based on those injuries and it was only after Claimant refused to return to work in good faith that Employer challenged Claimant's receipt of benefits.[6] Accordingly, *Boeing Vertol* and *Boddie* do not require a different result.

Finally, we are unpersuaded by Claimant's argument that Section 440(a) **requires** the imposition of litigation costs where a claimant prevails in whole or in part regardless of what evidence is used or whether the issues were actually

---

[6] To the extent Claimant argues he was forced to litigate the extent of his injuries due to Employer's not recognizing the concussion and cervical sprain, we disagree. Although Employer did not officially recognize those injuries, there is no dispute that Employer paid for Claimant's medical treatment and wage loss benefits related to those conditions until Claimant refused to return to modified duty work and, later, was found to have been fully recovered from all of his injuries.

contested. Although Section 440(a) uses the word "shall," it also uses limiting language that the costs relate to a "matter **at issue**" and that such award be a "**reasonable** sum for costs." 77 P.S. § 996(a) (emphasis added). Moreover, this conclusion would be contrary to the above-cited precedent that examined numerous factors in determining whether litigation costs relate to a contested issue on which the claimant prevailed. *O'Neill*, 29 A.3d at 58; *Jones*, 874 A.2d at 721. Contrary to Claimant's position that such reimbursements are mandatory, the determination of whether litigation costs are reasonable and reimbursable is left to a WCJ's discretion. *Jones*, 874 A.2d. at 721 n.3, 722; *Papernik*, 399 A.2d at 1207. For the foregoing reasons, we discern no basis for interfering with the WCJ's discretion here.

## IV. Conclusion

Although Section 440(a) provides for the reimbursement of reasonable litigation costs in cases where the claimant prevails in whole or in part on a contested or disputed issue, such costs must relate to the disputed issue on which the claimant prevailed. *O'Neill*, 29 A.3d at 58; *Jones*, 874 A.2d at 721. Reviewing the WCJ's decisions in this matter, in which the WCJ did not credit Claimant's evidence but relied solely on the testimony of Dr. Rochester, to partially grant the Review Petition to add injuries to Claimant's NCP that were not disputed by Employer, we discern no error or abuse of discretion in the WCJ's determination to limit the award of litigation costs to the cost of a copy of Dr. Rochester's deposition. Accordingly, the Board's Order is affirmed.

 

 

**RENÉE COHN JUBELIRER,** Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julio Pacheco,                                    :
                    Petitioner        :
                               :
           v.                                     :
                               :  No. 408 C.D. 2020
Workers' Compensation Appeal Board   :
(Nordstrom, Inc.),                                :
                 Respondent        :

## O R D E R

     **NOW**, March 22, 2021, the Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

                                        _____

                                     **RENÉE COHN JUBELIRER,** Judge