# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christal Walker, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 859 C.D. 2023 |
| | : | |
| City of Philadelphia (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | Submitted: July 5, 2024 |

BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                          FILED: April 15, 2025

Christal Walker (Claimant) petitions this Court for review of a July 13, 2023 order of the Workers' Compensation Appeal Board (Board), which affirmed an October 19, 2022 decision by Workers' Compensation Judge (WCJ) Lawrence Beck granting a Petition to Terminate Benefits (2021 Termination Petition) filed by the City of Philadelphia (Employer).  Claimant argues that WCJ Beck erred as a matter of a law by failing to consider credibility determinations by other WCJs at previous stages of this litigation, by improperly relying on the opinions of Employer's medical expert, and by declining to award litigation costs to Claimant.  Because WCJ Beck's findings of fact are supported by substantial, competent evidence, we affirm the Board.

## I. Background

Claimant sustained a work-related injury on April 13, 2010. Certified Record (C.R.), Item No. 19, 05/24/2012 WCJ Decision, Finding of Fact (F.F.) No. 1. Until that date, Claimant was working for Employer as a full-time data services clerk, a sedentary position involving data entry, typing, and faxing. *Id.*, F.F. No. 59. Employer issued a Notice of Temporary Compensation Payable (NTCP) listing the injury as a lumbar contusion and immediately began paying Claimant wage loss benefits. *Id.* Claimant filed a Petition to Review Compensation Benefits (Review Petition) on December 3, 2010, alleging that the injury was insufficiently described in the NTCP. *Id.*, F.F. No. 3. While the Review Petition was awaiting adjudication, Employer filed petitions to terminate Claimant's benefits (2010 and 2011 Termination Petitions), asserting that Claimant was fully recovered as of July 1, 2010, and October 25, 2010. *Id.*, F.F. Nos. 2, 7. In a 2012 decision, WCJ Nancy Goodwin denied the 2010 and 2011 Termination Petitions and granted the Review Petition, amending the description of Claimant's injury to "a lumbosacral strain and sprain, discogenic lumbar radiculopathy with the main focus in the right L5-S1 nerve root distribution, and mechanical low back symptomology with face joint pathology." *Id.*, F.F. No. 68. A Petition to Modify Compensation Benefits, alleging less than 50% impairment on the basis of a September 3, 2015 Impairment Rating Evaluation, was denied by WCJ Todd Seelig in a May 26, 2017 decision. *See* C.R., Item No. 20.

Employer filed a new petition to terminate Claimant's benefits (2020 Termination Petition) on January 16, 2020, alleging full recovery as of September 24, 2019. *See* C.R., Item No. 32, 02/11/2021 WCJ Decision, F.F. No. 6. In opposition to the Termination Petition, Claimant presented the testimony of Dr.

Melody Hu, her treating physician. *Id.*, F.F. No. 7. In a February 11, 2021 decision, WCJ Seelig denied the 2020 Termination Petition, finding that Claimant had not fully recovered from her work injury. *Id.*, Conclusion of Law (C.L.) No. 3.

On July 30, 2021, Employer filed another petition to terminate Claimant's benefits (2021 Termination Petition) alleging full recovery as of July 1, 2021, the date of an independent medical examination (IME) by Dr. David Yucha. C.R., Item No. 2. Claimant filed an answer on August 2, 2021, denying full recovery and requested attorney's fees pursuant to Section 440(a) of the Workers' Compensation Act (Act).[1] Additionally, Claimant and Employer filed petitions to review a Utilization Review (UR) Determination (UR Review Petitions) by Dr. Natalio Schwarz, which found treatment by Claimant's treating physician was reasonable and necessary in part. C.R., Item Nos. 5, 7. In support of the Termination Petition and its UR Review Petition, Employer submitted the deposition testimony of Dr. Yucha and the UR report by Dr. Schwartz. In response, Claimant offered her own testimony and that of Dr. Hu, her treating physician.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, 77 P.S. § 996(a). Section 440(a) provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

## A. Claimant's Testimony

Testifying via videoconference, Claimant stated that she had been working for Employer for 20 years at the time of her injury. C.R., Item No. 28, 08/13/2020 Hr'g Tr. at 14. Claimant performed her duties for Employer's AIDS Coordinating Office, where she was responsible for the entry and maintenance of clinical data and the shredding of sensitive documents. *Id.* at 14-15. On April 13, 2010, Claimant attempted to sit in an office chair, but the chair moved out from under her body, causing Claimant to fall to the floor. *Id.* at 15-16. Claimant left work following the injury and, apart from a brief period of part-time, limited-duty work, has not been back since. *Id.* at 16.

To treat the pain resulting from the injury, Claimant first saw Dr. Sophia Lam and, upon her retirement, began seeing Dr. Hu on a monthly basis. *Id.* at 17. Dr. Hu's treatment has consisted of epidural steroid injections, a prescription for Gabapentin (an anticonvulsant), Percocet, Tizandine (a muscle relaxer), and morphine. *Id.* at 17-20. Claimant testified that these medications "were really assisting with [her] chronic pain." *Id.* at 17. However, Claimant did not believe at the time of her testimony that she could return to work due to lingering symptoms, particularly lower back pain that radiates down to her right leg. *Id.* at 20. Claimant also complained of continued weakness in her right leg, necessitating the use of a cane, as well as frequent sleep loss. *Id.*

Testifying at a November 9, 2021 deposition, Claimant listed her everyday activities as walking her dog, cleaning, cooking, and shopping. C.R., Item No. 31, 11/9/2021 Dep. Tr. at 6. Claimant also acknowledged that she had travelled to Michigan and the Poconos in the previous year. *Id.* at 15-16. Nonetheless, Claimant continued to complain of several ailments, including not only persistent back pain

4

but seizures, swelling in her ankles and feet, and short-term memory loss. *Id.* at 18-20. In addition to continued treatment by Dr. Hu, Claimant was seeing a chiropractor, a neurologist, and a cardiologist for these issues. *Id.* at 20-22. A colleague of Dr. Hu also recommended surgery, which Claimant testified that she was considering. *Id.* at 7-8.

At another videoconference hearing before the WCJ on March 24, 2022, Claimant testified that she continued to make monthly visits to Dr. Hu as well as weekly visits to a chiropractor. C.R., Item No. 16, 03/24/2022 Hr'g Tr. at 15-16. Claimant testified that she continued to experience "pinched nerves, sciatica pain, [and] lower back pain radiating down [her] legs" that "goes down to the toes where there is tingling and numbness and pain," as well as right leg weakness and sleep loss. *Id.* at 19-20. To treat these symptoms, Claimant was still taking Gabapentin, Tizandine, and morphine, and had begun taking oxycodone and Skelaxin (another muscle relaxer). *Id.* at 18-19. Since her previous testimony on November 9, 2021, Claimant had travelled to Ocean City, Maryland, and Tampa, Florida. *Id.* at 23-24. Claimant nonetheless maintained that she could not return to work because of her lingering pain symptoms. *Id.* at 20.

### B. Dr. Hu's Testimony

Testifying at a July 28, 2020 deposition, Dr. Hu stated that she was board certified in anesthesiology as well as interventional pain medication. C.R., Item No. 25, 07/28/2020 Dep. at 7-8. Dr. Hu recalled that she first treated Claimant on September 9, 2017, after taking over Dr. Lam's practice. *Id.* at 10-11. At the initial examination, Dr. Hu also observed that Claimant's gait, motor strength, big toe dorsiflexion, and plantar foot flexion were all normal. *Id.* at 36. A straight leg raising test was negative. *Id.* at 37. However, Claimant also complained of great

5

pain in her lower back upon Dr. Hu's palpation of it, particularly on the right side. *Id.* at 11-12. Claimant had already sought treatment from a chiropractor and an acupuncturist as well as Dr. Lam for these symptoms, but did not experience any substantial improvement. *Id.* at 12. Dr. Hu prescribed regular physical therapy, a right-sided medial branch nerve block, a Butrans patch, benzodiazepine, and Percocet four times daily. *Id.* at 13-14. After the nerve block provided immediate relief, the back pain returned, for which Dr. Hu administered additional medial branch nerve blocks. *Id.* at 15-16. Meanwhile, Dr. Hu discontinued the Butrans patch and gradually weaned Claimant off the benzodiazepine. *Id.* at 16.

Dr. Hu ordered a magnetic resonance imaging (MRI), which was performed on June 8, 2020. *Id.* at 17. In Dr. Hu's opinion, the MRI revealed a broad-based disc bulge, with moderate to severe face hypertrophy and moderate foraminal narrowing at several vertebrae. *Id.* at 18. Dr. Hu had not ordered any diagnostic studies since then, since Claimant's pain complaints have been "consistent" and "usual." *Id.* at 51. Accordingly, Dr. Hu continued to prescribe morphine, Gabapentin, and Oxycodone. *Id.* at 20. Another nerve block injection, administered on July 15, 2020, provided "greater than [50%] relief," but Claimant also reported during the visit that the radiating pain in her feet was worsening. *Id.* at 23-24.

At a subsequent deposition on January 27, 2022, Dr. Hu testified that she continued to see Claimant monthly. C.R., Item No. 23, 01/27/2022 Dep. Tr. at 12. During Claimant's most recent visit, on January 12, 2022, Dr. Hu concluded that Claimant continued to experience pain in the lumbosacral area radiating into her right leg and feet. *Id.* at 20-21. An epidural injection during that visit provided relief, but a physical examination revealed that Claimant continued to experience an antalgic gait and spasms in the lower lumbar spine. *Id.* at 19-20. Thus, Dr. Hu

6

opined based on a reasonable degree of medical certainty that Claimant was still disabled from performing her pre-injury job. *Id*. at 31.

### C. Dr. Yucha's Testimony

Testifying at an October 28, 2021 deposition, Dr. Yucha stated that he was a board-certified orthopedic surgeon who performs nonoperative care of lower back and cervical spine injuries. C.R., Item No. 30, 10/28/2021 Dep. at 6-7. Asked to characterize "the mechanism of injury in this case," Dr. Yucha recalled that Claimant "fell out of a broken chair" and landed on her back or buttocks. *Id.* at 20. Dr. Yucha observed that Claimant was judicially determined to have sustained a "[l]umbosacral sprain and discogenic lumbar radiculopathy with the main focus on the right L5-S1 lumbar nerve root distribution and mechanical low back symptomatology with face joint pathology." *Id*. at 21. However, Dr. Yucha acknowledged that he did not review WCJ Goodwin's decision and that he learned the official injury description from Employer's counsel. *Id.*

At the July 1, 2021 IME, Dr. Yucha first studied Claimant's medical records, including notes from Dr. Hu's office, her chiropractor, and the UR determination by Dr. Schwartz. *Id.* at 8-9. A June 12, 2013 note by Claimant's primary care physician included the phrase "musculoskeletal negative," which Dr. Yucha interpreted as "no pertinent positives . . . related to complaints of back pain." *Id.* at 12. A subsequent note by the physician, written on September 25, 2013, indicated "no back pain." *Id.* at 13. Other notes from physicians following examinations in 2016 and 2017 similarly made no mention of lower back pain. *Id.* at 14-15. Dr. Yucha gathered from his review of the records that there was "an eight-year gap in reports of lower back pain," from 2010 to 2018. *Id.* at 16.

7

Following the review of records, Dr. Yucha performed an examination of Claimant, which he characterized as "completely normal." *Id.* at 17. Dr. Yucha found "no evidence of any sort of radicular pathology" or spasms in her lower back. *Id.* Claimant did express "exquisite discomfort" in response to palpation of her lumbar and paraspinal musculature, which Dr. Yucha described as "out of proportion" to the amount of pressure applied. *Id.* at 27. However, Dr. Yucha found nothing in the course of the examination that would "objectively" support Claimant's subjective pain complaints. *Id.* at 32. Dr. Yucha thus attributed the pain complaints to symptom magnification. *Id.* at 33. Asked what treatment he believed Claimant needed, Dr. Yucha responded: "I don't think she needs treatment with anybody." *Id.* at 34. Accordingly, Dr. Yucha opined that Claimant was fully recovered from her injury and capable of returning to full-duty work. *Id.* at 33.

## D. The Schwartz UR Report

Following the IME by Dr. Yucha, Employer requested UR of "[a]ny and all treatment[,] including but not limited to examination, prescriptions, referrals, durable medical equipment, injections, modalities, etc., from [June 30, 2021 onward by] Dr. Melody Hu[,] including any and all providers billing under Dr. Melody Hu's license or name." C.R., Item No. 33. The request was assigned to Dr. Schwartz, who reviewed records from 54 visits made by Claimant to Dr. Hu's office between September 2017 and August 2021. *Id.* at 2.

Based on his review of the relevant records, Dr. Schwartz gathered that Claimant suffered from "chronic pain syndrome, low back pain, scoliosis, opioid dependence, [and] lumbosacral radiculopathy," among other ailments, and that Claimant has consistently rated her pain as an eight on the visual analogue scale (VAS). *Id.* at 6, 11. While acknowledging that there is no consensus on how often

8

individuals suffering from chronic pain should make office visits, Dr. Schwartz opined that monthly visits to Dr. Hu's office were reasonable and necessary to treat Claimant's pain. *Id.* at 7. Dr. Schwartz also determined that up to three epidural steroid injections yearly are reasonable and necessary, but that medial branch blocks (which he labelled "controversial" and "weakly supported") were not. *Id.* at 8-9. Regarding Dr. Hu's prescription of long-term opioid relief, including morphine and oxycodone, Dr. Schwartz noted that such remedies "should only be considered as a last resort after all other treatments have failed," due to their "multiple side effects." *Id.* at 11. Dr. Schwartz nonetheless opined that some opioid use, while "not ideal," appeared "somewhat effective" in treating Claimant's pain and was therefore reasonable and necessary. *Id.*

### E. WCJ Beck's Decision

In an October 19, 2022 decision, WCJ Beck granted the 2021 Termination Petition. WCJ Beck explained that he found Claimant "not credible," and was "troubled regarding her present and past testimony." C.R., Item No. 9, 10/19/2022 WCJ Decision, F.F. No. 8. Claimant's pain complaints were, in WCJ Beck's opinion, "overstated," "overwrought," and "not believed considering the absence of objective findings on examination." *Id.*

As for the medical experts, WCJ Beck credited Dr. Yucha's testimony over Dr. Hu's, explaining that the former was an orthopedic surgeon and thus "more qualified . . . to address musculoskeletal injuries." *Id.*, F.F. No. 9. WCJ Beck also expressed concern about Dr. Hu's reliance on long-term opioid prescriptions and the paucity of "documented objective findings" to support Claimant's pain complaints, "even by Dr. Hu's examinations." *Id.* By contrast, WCJ Beck explained, "Dr. Yucha credibly, cogently, and consistently explained the relationship, or lack

9

thereof, between Claimant's magnified, subjective complaints" and the lack of diagnostic findings. *Id.* Thus, WCJ Beck credited Dr. Yucha's opinion that Claimant was fully recovered from her work injury as of July 1, 2021. *Id.* WCJ Beck also denied litigation costs, finding that Employer's contest was reasonable. *Id.*, Conclusion of Law No. 4.

Regarding the UR report, WCJ Beck credited Dr. Schwartz's opinion on the utility of several treatments administered by Dr. Hu. *Id.*, F.F. No. 10. However, since Dr. Schwartz only conducted UR review of treatment from June 30, 2021 onwards, WCJ Beck only found treatment to be reasonable and necessary on that day only. *Id.*, F.F. No. 12. WCJ Beck also concluded that "Employer's contest was reasonable at all times." *Id.*, C.L. No. 4.

Claimant appealed to the Board, which affirmed WCJ Beck's decision in full. *See* C.R., Item No. 12. This appeal followed.[2]

## II. Issues

Claimant raises three main issues on appeal.[3] First, Claimant argues that WCJ Beck committed an error of law by failing to abide by the factual findings of WCJs Goodwin and Seelig in previous litigation. Second, Claimant argues that WCJ Beck improperly relied on the opinions of Dr. Yucha, whose testimony, according to Claimant, was unreliable and failed to establish a change in Claimant's condition. Lastly, Claimant argues that WCJ Beck erred by failing to award litigation costs after he denied Employer's UR Review Petition.

---

[2] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva),* 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

[3] We have reordered some of Claimant's arguments for clarity and ease of disposition.

10

### III. Discussion

In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. *Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.)*, 919 A.2d 922, 926 (Pa. 2007). The employer satisfies its burden when its medical expert unequivocally testifies in his opinion, within a reasonable degree of medical certainty, that the claimant has fully recovered and can return to work without restrictions and that there are no objective medical findings to substantiate the claimant's symptoms or to connect those symptoms to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). A WCJ can properly make a finding that an employer has met the standard set forth in *Lewis* by accepting medical evidence of full recovery, which would demonstrate "a change in [the c]laimant's condition." *Delaware Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 35 (Pa. Cmwlth. 2008).

### A. The Previous WCJ Determinations

First, we address Claimant's argument that WCJ Beck failed to follow the decisions of WCJs Goodwin and Seelig. In support, Claimant points to this Court's holding in *Paul v. Workers' Compensation Appeal Board (Integrated Health Services)*, 950 A.2d 1101, 1106 (Pa. Cmwlth. 2008), that, when injuries have been the subject of prior legal proceedings in which a WCJ made an adjudication relating to them, the parties are bound by those judicial determinations. In Claimant's view, WCJ Beck failed to conform to the holdings of *Lewis* and *Paul* "by failing to articulate the substance of [WCJ] Goodwin's and [WCJ] Seelig's prior decisions." Claimant's Br. at 16. Claimant observes that she was judicially determined by WCJ

11

Goodwin in 2012 to have sustained a disabling injury, from which she had not recovered, and that WCJ Goodwin denied the 2010 and 2011 Termination Petitions on that basis. Claimant's Br. at 13-14. Subsequently, in denying the 2020 Termination Petition, WCJ Seelig "thoughtfully determined" (in Claimant's words) Dr. Hu to be credible and persuasive on the question of Claimant's fitness for work. *Id*. at 14. Claimant concludes that WCJ Beck's failure to follow such "thoughtful and well-reasoned judicial assessments" constitutes legal error. *Id*. at 18.

Claimant's argument is lacking in foundation. The question before WCJ Beck was not whether Claimant was fully recovered as of 2010, which was the question before WCJ Goodwin; nor was the question before him whether Claimant was less than 50% impaired as of 2015, as it was before WCJ Seelig; nor was it whether Claimant was fully recovered as of September 24, 2019, as it was subsequently before WCJ Seelig. Rather, the question before WCJ Beck was whether Claimant was fully recovered as of July 1, 2021, the date of the IME by Dr. Yucha. No matter how thoughtful or well-reasoned Claimant finds the decisions of the previous WCJs, they are not binding on WCJ Beck, who was tasked with adjudicating a different issue. It is well settled that the WCJ "has exclusive province over questions of credibility and evidentiary weight." *Repash v. Workers' Comp. Appeal Bd. (City of Phila.)*, 961 A.2d 227, 232 (Pa. Cmwlth. 2008). Thus, WCJ Beck was as free to make his own credibility determinations as WCJs Goodwin and Seelig were to make theirs. Claimant does not give us a legitimate basis for disturbing his determinations on appeal.

## B. Dr. Yucha's Testimony

Next, we address Claimant's argument that WCJ Beck improperly found Dr. Yucha's testimony credible and persuasive. A medical opinion may be rendered

incompetent when made by a medical professional who lacks a complete grasp of the medical situation or the work incident. *Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc.)*, 852 A.2d 424, 428 (Pa. Cmwlth. 2004). The opinion of a medical expert must be viewed as a whole, and inaccurate information will not defeat an expert's opinion unless the opinion is *solely* dependent on those inaccuracies. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001).

Instantly, Claimant argues that Dr. Yucha could not have testified credibly or persuasively on a change in Claimant's condition because "there is no evidence that [he] reviewed the 2018 MRI study that was performed on [] Claimant or any MRI study that was performed on her." Claimant's Br. at 16. In addition, Claimant maintains that Dr. Yucha further undermined his credibility by stating that there was an eight-year gap in her complaints of lower back pain, which fails to account for the treatment that Claimant sought from Dr. Hu in 2017. Claimant reasons that the belief in an eight-year gap "influenced Dr. Yucha's opinion that [] Claimant was guilty of symptom magnification when he evaluated her." *Id.* at 18.

We disagree that Dr. Yucha's opinions were rendered not credible or not persuasive by either of the alleged defects in his testimony. Dr. Yucha understood the facts of the work incident and acknowledged the work injury as it was judicially determined by WCJ Goodwin in 2012, and thus had a basis for concluding after his examination of Claimant that she was fully recovered from that injury. The fact that Dr. Yucha declined to discuss the 2018 MRI and was not questioned on it by counsel for either party does not support the inference that he failed to examine it during his review of Claimant's records. It is entirely possible, and permissible, that Dr. Yucha

13

reviewed the MRI and omitted it from his testimony because it was irrelevant to his conclusions.

As for Claimant's argument that Dr Yucha was "influenced" by his inaccurate belief in an eight-year gap between complaints of back pain, we reject it as speculative and unfounded. As WCJ Beck correctly explained, Dr. Yucha's conclusions depended on the discrepancy that he observed between Claimant's subjective pain complaints and the absence of objectively verifiable phenomena that would corroborate those complaints. Dr. Yucha did not testify that the purported eight-year gap was the reason, or even *one* of the reasons, for his conclusions. Thus, we see no reason to disturb WCJ Beck's decision to credit Dr. Yucha's testimony over Dr. Hu's.

## C. Litigation Costs

Lastly, we address Claimant's argument that WCJ Beck erred by failing to award litigation costs. As noted previously, Section 440(a) of the Act affords a claimant who prevails in whole or in part the ability to receive costs, including a reasonable sum for attorney fees; "[p]rovided," however, that "cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer." 77 P.S. § 996(a). The burden of proving a reasonable basis for the contest is borne by the employer, and it must be evident from medical evidence that the employer's contest is not frivolous or undertaken to harass the claimant. *Thompson v. Workers' Comp. Appeal Bd. (Cinema Ctr.)*, 981 A.2d 968, 973 (Pa. Cmwlth. 2009). While the question of whether there has been a reasonable contest depends on both the facts and the legal issues involved in each case, it is "a question of law fully reviewable by this Court." *Gabriel v. Workers' Comp. Appeal Bd. (Proctor and Gamble Prods. Co.)*, 242 A.3d 956, 963 (Pa. Cmwlth. 2020).

Instantly, Claimant correctly observes that she "prevailed in part" before WCJ Beck, when he denied Employer's UR Review Petition. Claimant's Br. at 21. "Despite this denial," Claimant argues, WCJ Beck "failed to award any litigation costs to [] Claimant's counsel." *Id.* In support of her contention that the failure to award litigation costs was legally erroneous, Claimant points to this Court's holding in *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071 (Pa. Cmwlth. 2009). *Reyes*, according to Claimant, stands for the proposition that "a claimant is entitled to litigation costs where he or she prevails on any contested aspect of the litigation." Claimant's Br. at 20. Claimant thus asks this Court to remand the matter to a WCJ "with the direction that he determine appropriate litigation costs." *Id.* at 21.

Claimant's argument is unpersuasive. As noted above, Section 440(a) only *requires* the award of litigation costs when an employer has failed to show that it has engaged in an reasonable contest; otherwise, it is subject to the WCJ's discretion.[4] *See Lorino v. Workers' Comp. Appeal Bd. (Commonwealth of Pa.)*, 266 A.3d 487, 494 (Pa. 2021) (explaining that the award of costs under Section 440(a) is "mandatory" when a contest is unreasonable, but that "the WCJ is permitted, but not required, to exclude an award of attorney's fees" when there is a reasonable basis for the employer's contest). Although WCJ Beck found Dr. Hu's treatment of Claimant to be reasonable and necessary for one day before her full recovery, he also determined in his decision that "Employer's contest was reasonable at all times."

---

[4] For this reason, we observe that Claimant misstates our holding in *Reyes*. In that case, it was the *claimant* who argued that he was "entitled to an award of litigation costs because he prevailed, in part, in [his] litigation." 967 A.2d at 1078. We rejected that claim, since, while technically true that he prevailed in the award of medical benefits only, the claimant failed to produce evidence that there were any medical bills unpaid by the employer. *Id.* at 1079. Since the claimant did not prevail on the sole "contested issue" (i.e., "the nature of his injury and disability"), we affirmed the WCJ's and Board's determination that he was not entitled to litigation costs. *Id.* at 1080.

15

10/19/2022 WCJ Decision, C.L. No. 4.  Having reviewed the record and the parties' claims, we agree.  Employer sought UR of Dr. Hu's treatment of Claimant after Dr. Yucha performed his IME and concluded unambiguously that she was fully recovered from her work injury.  Since Employer's contest of the reasonableness and necessity of the treatment was supported by substantial, competent medical evidence, we see no reason to suppose that it was frivolous or undertaken to harass Claimant.

## IV. Conclusion

Ultimately, our appellate role in a workers' compensation case is not to reweigh the evidence or the credibility of the witnesses, but simply to determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 33 n.5 (Pa. Cmwlth. 2015).  We will not disturb WCJ Beck's decision granting the 2021 Termination Petition or denial of Claimant's UR Review Petition, which turn on his credibility determinations.  Furthermore, WCJ Beck properly exercised his discretion in declining to award litigation costs, as we agree that Employer engaged in a reasonable contest at all times.  Accordingly, we affirm the Board.

 

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christal Walker,                              :
                 Petitioner       :
                                    :
          v.                            :   No. 859 C.D. 2023
                                    :
City of Philadelphia (Workers'               :
Compensation Appeal Board),                  :
               Respondent     :

# **O R D E R**

AND NOW, this 15th day of April 2025, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated July 13, 2023, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge