**Taron BODDIE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CROWN DISTRIBUTION CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 10, 2015.

Decided July 28, 2015.

Publication Ordered Oct. 1, 2015.

---

Michael J. Foley, Scranton, for petitioner.

Kristin M. Waller, Paoli, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge MARY HANNAH LEAVITT.

Taron Boddie (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) decision (1) denying Claimant's petition to establish a thoracic injury as part of his work injury and (2) holding that the cost of Claimant's medical expert's deposition was not a reimbursable litigation cost because the WCJ rejected the doctor's testimony. For the reasons that follow, we reverse in part, vacate in part and remand for further findings.

In January 2012, Claimant began working for Crown Distribution Center (Employer) as a "lumper," which involved unloading boxes from large trucks onto pallets and moving the pallets with a pallet jack. On February 28, 2012, Claimant fell off a pallet jack onto a concrete floor and injured his back. Claimant immediately notified Employer of his injury and sought medical treatment, first at a hospital emergency room and then with Employer's panel physician, Dr. Paul Remick. However, Employer did not acknowledge liability for the injury.

On March 15, 2012, Claimant filed a claim petition alleging that he had sustained multiple lumbar fractures and a sprain/strain of his back in the February 28th incident. Claimant sought total disability benefits and payment of his medical bills. Employer filed an answer denying all allegations. The claim petition was assigned to a WCJ.

Hearings were held on April 17, 2012, and June 7, 2012. Both parties attended but no testimony was taken. Claimant's counsel explained that Claimant was seen at the hospital emergency room on the day he was injured and was diagnosed with lumbar fractures. Claimant then saw Dr. Remick, who agreed that Claimant had sustained a work injury and could not return to work until at least June 2012. Dr. Remick discontinued treating Claimant at Employer's instruction. On May 15, 2012, Claimant sought treatment with Leroy J. Pelicci, M.D. Claimant's counsel told the WCJ that he had scheduled Dr. Pelicci's deposition for July 19, 2012.

Employer's counsel informed the WCJ that Employer denied all allegations in the claim petition. Employer's counsel was attempting to investigate the alleged work injury but neither Employer nor Dr. Remick had provided any records to counsel. Claimant agreed to answer interrogatories to aid Employer's counsel with the investigation. Employer's counsel stated that an

independent medical examination (IME) was scheduled for June 14, 2012. Claimant attended the IME.

On July 19, 2012, Employer issued a Notice of Compensation Payable (NCP) accepting liability for a lumbar spine injury described as "L–2–3–4 transverse process fracture" and paying total disability benefits as of February 28, 2012.[1] Reproduced Record at 92a (R.R. ——).

Also on July 19, 2012, Claimant deposed Dr. Pelicci in support of his claim petition. Dr. Pelicci is board certified in neurology and pain management and began treating Claimant on May 15, 2012.

Claimant, who was 33 years old without prior back trouble, told Dr. Pelicci that his fall caused constant pain in his back and leg as well as back spasms. The hospital records from the date of the injury reported nondisplaced transverse fractures from L2 through L4. In his physical exam, Dr. Pelicci noted muscle spasm in the low back and thoracic areas and decreased strength and sensation in the right leg. The straight leg raise test was positive, indicating nerve root irritation in the low back. Dr. Pelicci ordered MRIs. The thoracic MRI showed a right disc protrusion at T9–T10 that caused pain and spasms. The lumbar MRI showed a disc protrusion at L4–5. Dr. Pelicci also performed an EMG and nerve conduction study that showed an L5–S1 radiculopathy in the right leg.

Based on Claimant's history, a review of medical records, the radiographic test results and physical examination, Dr. Pelicci diagnosed Claimant with fractures of the transverse processes from L2 through L4; an L4–5 lumbar disc protrusion; an L5–S1 radiculopathy; and a thoracic disc protrusion at T9–T10. Dr. Pelicci opined that all of these conditions were caused by the incident at work and prevented Claimant from performing any type of job. Dr. Pelicci sent Claimant for chiropractic treatment and prescribed pain medication. Dr. Pelicci testified that he would like to consider additional treatments but cannot do so until insurance issues are resolved.

Employer presented the deposition testimony of Neil Kahanovitz, M.D., a board certified orthopedic surgeon who did an IME on June 14, 2012. During the physical examination, Claimant complained of pain at the thoracolumbar junction[2] to the sacrum and in his right-sided muscles from L1 to the sacrum. The examination was objectively normal with no muscle spasm and no signs of radiculopathy. Dr. Kahanovitz interpreted the thoracic MRI as showing degenerative disc bulging at T8–9, without neurologic compression, and the lumbar MRI as showing mild degenerative changes from L3–4 to L5–S1 and degenerative disc bulging at L4–5 and L5–S1, without neurologic compression.

Dr. Kahanovitz agreed that Claimant had sustained nondisplaced right transverse process fractures at L2–3–4. Following the IME, Dr. Kahanovitz restricted Claimant to sedentary or light duty work. Dr. Kahanovitz testified that such fractures typically heal within six months; however, because he examined Claimant on only one occasion, Dr. Kahanovitz could not state with certainty whether Claimant

---

1. At the final hearing, the parties mentioned the NCP and the WCJ indicated that he had a copy; however, the NCP was not submitted into evidence. By order dated December 5, 2014, this Court granted Claimant's unopposed petition to include the NCP as part of the record.

2. "Thoracolumbar" relates to "the thoracic and lumbar portions of the vertebral column." STEDMAN'S MEDICAL DICTIONARY at 1829 (27th ed. 2000).

was ready to return to his pre-injury job without restrictions.

Dr. Kahanovitz opined that Claimant did not sustain any other traumatic injuries to his discs or nerve roots. Dr. Kahanovitz dismissed the EMG performed by Dr. Pelicci as an unreliable test not corroborated by the MRI and reiterated his opinion that Claimant did not have a radiculopathy. When asked about Dr. Pelicci's opinion that Claimant's thoracic disc bulge was causing muscle spasms, Dr. Kahanovitz testified that he had never heard of that happening but allowed that "it's certainly possible." R.R. 119a. Dr. Kahanovitz agreed that the medical records documented that Claimant complained of thoracic pain along with lumbar pain following his work incident.

At the WCJ's final hearing on December 18, 2012, counsel for both Claimant and Employer informed the WCJ that despite the issuance of subpoenas, neither counsel had received anything from Employer. There was no incident report and no statement of wages. Employer's counsel was forced to estimate Claimant's wages and Claimant disagreed with the figure.

At the final hearing, Claimant testified. He explained that he was driving a pallet jack that malfunctioned, causing him to flip off and land on his back on the concrete floor. A co-worker witnessed the accident and the supervisor came and filled out paperwork. The supervisor told Claimant that if he decided to go to the hospital, he should call Employer to obtain the necessary insurance information. At Employer's instruction, a co-worker took Claimant home. Claimant immediately went to the hospital where he was evaluated and had x-rays and a CAT scan of his back. Claimant was diagnosed with lumbar fractures. Claimant called Employer as instructed but did not receive any insurance information. Employer finally contacted Claimant

a month later with a list of panel physicians and Claimant went to see Dr. Remick. Claimant then went to Dr. Pelicci. Claimant testified that he never had a back problem prior to the incident; after the incident he developed pain in his middle back, lower back and his right leg. Claimant testified that his pain prevents him from returning to his job with Employer.

Claimant stated that Employer had started paying him disability benefits in July 2012, but Claimant disagreed with the amount. Claimant testified that his average weekly wage was $320, not $250 as estimated by Employer's counsel.

At the end of the hearing, the parties informed the WCJ that although Employer had accepted liability for a work injury by issuing an NCP, there remained a dispute about the average weekly wage and whether Employer "should have recognized a thoracic injury in addition to the lumbosacral injury." R.R. 215a. The WCJ responded "all right" and closed the record. *Id.*

Because Employer issued an NCP acknowledging a work injury in the course of the litigation, the WCJ treated Claimant's claim petition as a petition to review compensation benefits. The WCJ described the issues to be decided as follows:

> Since the employer had already accepted the work related injury to this claimant, consisting of the L2–3–4 transverse process fractures, *the only issue is whether there is a lumbar injury at L5–S1 in addition to the fractures accepted by the employer.* The other issue is with regard to the average weekly wage as the employer did not submit a statement of wages despite repeated demand.

WCJ Decision, June 10, 2013, at 5; Finding of Fact No. 13 (emphasis added).

 The WCJ credited the testimony of Dr. Kahanovitz regarding the absence of a lumbar injury or nerve root compression at L4–5 or L5–S1 over that of Dr. Pelicci and Claimant.[3] The WCJ did not discuss Claimant's alleged thoracic injury. The WCJ concluded that Claimant failed to prove he sustained any work injuries besides those listed on the NCP, and denied Claimant's petition. Nevertheless, the WCJ credited Claimant's testimony that the $250 average weekly wage listed on the NCP was incorrect and should be changed to $320, and ordered Employer to pay Claimant accordingly. The WCJ also found that Employer must reimburse Claimant for his litigation costs, with the exception of Dr. Pelicci's deposition fee because Dr. Pelicci's testimony was not credited.

 Claimant appealed, and the Board affirmed. In doing so, the Board acknowledged that the WCJ failed to address the alleged thoracic injury but held that the omission was of no moment because the WCJ's credibility determinations made it impossible for Claimant to prove he sustained a thoracic injury in the work incident. The Board also concluded that the WCJ properly excluded the cost of Dr. Pelicci's deposition because that testimony related to an issue on which Claimant did not prevail. Claimant then petitioned for this Court's review.[4]

On appeal, Claimant raises two issues for our consideration. First, Claimant argues that a remand is required because the WCJ denied Claimant's petition without addressing whether Claimant sustained a thoracic injury in the work incident. Second, Claimant argues that he is entitled to be reimbursed for the cost of Dr. Pelicci's deposition.

 The claimant bears the burden of proving he sustained an injury that is causally related to his employment. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corporation),* 144 Pa.Cmwlth. 37, 600 A.2d 677, 679 (1991). When there is no obvious causal connection between an injury and the alleged work-related cause, unequivocal medical evidence is necessary to establish that connection. *Budd Trailer Company, Inc. v. Workmen's Compensation Appeal Board (Behney),* 105 Pa.Cmwlth. 258, 524 A.2d 525, 527 (1987).

Claimant argues that the WCJ erred in denying his petition for failure to establish a work injury other than the L2–3–4 transverse process fractures listed in the NCP because the WCJ made no specific findings regarding the alleged thoracic injury.[5] Claimant asserts that the Board erred by holding that the WCJ's credibility determinations were dispositive of the thoracic injury issue. To the contrary, Claimant contends, the WCJ's credibility determinations cannot be dispositive because the WCJ admitted that he was deciding only the extent of a lumbar injury. Claimant argues that a remand is necessary for the WCJ to decide whether the work injury includes a thoracic component.

3. The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth.1995).

4. In reviewing an order of the Board, this Court must determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman),* 39 A.3d 1028, 1033 n. 6 (Pa.Cmwlth.2012).

5. Claimant does not challenge the denial of his claim for additional lumbar injuries.

Employer rejoins that because the WCJ credited Dr. Kahanovitz over Claimant and Dr. Pelicci, Claimant could not prove his work injury includes additional thoracic injuries. Employer posits that in light of the credibility determinations, it is irrelevant that the WCJ did not address Claimant's alleged thoracic injury.

Section 422(a) of the Workers' Compensation Act [6] (Act) requires the WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions." 77 P.S. § 834.[7] The WCJ has a duty to "make crucial findings of fact on all essential issues necessary for review by the Board and this Court." *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 159 Pa.Cmwlth. 342, 633 A.2d 230, 234 (1993).

The parties informed the WCJ that the scope of the work injury was not settled and that the WCJ had to decide whether Employer "should have recognized a thoracic injury in addition to the lumbosacral injury." R.R. 215a. In his decision, the WCJ mistakenly stated that because Employer had accepted the L2–3–4 transverse process fractures, "the only issue is whether there is a lumbar injury at L5–S1 in addition to the fractures accepted by the employer." WCJ Decision, June 10, 2013, at 5; Finding of Fact No. 13. The WCJ

credited Dr. Kahanovitz over Dr. Pelicci and Claimant, but these credibility determinations related exclusively to the lumbar spine. There was no determination about the alleged thoracic injury. Thus, the WCJ failed to address a crucial issue in this case.

The Board erred in holding that the WCJ's general credibility findings were dispositive, even without addressing Claimant's alleged thoracic injury. In doing its appellate review the Board "should not infer from the absence of a finding on a given point that the question was resolved in favor of the party who prevailed below, for the point may have been overlooked." *ARMCO, Inc. v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Cmwlth. 326, 590 A.2d 827, 831 (1991) (quoting *Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556, 561 (1975)). It cannot be assumed that the WCJ would have credited Dr. Kahanovitz over Dr. Pelicci and Claimant on the alleged thoracic injury. Where, as here, the WCJ has failed to address a crucial issue, a remand for a specific credibility finding on the issue and an explanation of the decision is required. *ARMCO, Inc.*, 590 A.2d at 831. Accordingly, we vacate the denial of Claimant's petition seeking recognition of a thoracic work injury and remand for further findings and conclusions on that issue.

---

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

7. Section 422(a) states in relevant part:
 All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.
 77 P.S. § 834.

■ Claimant also argues that the Board erred ·in affirming the WCJ's *sua sponte* disallowance of the $2,000 cost for Dr. Pelicci's deposition on the basis that Claimant was unsuccessful in the litigation. Claimant argues that he was successful, at least in part, with respect to his claim petition and this entitles him to. be reimbursed for Dr. Pelicci's deposition.

Employer responds that once it issued an NCP accepting a work injury, Claimant made the decision to continue the litigation to expand the description of the work injury. Employer argues that because the WCJ rejected Dr. Pelicci's testimony regarding additional injuries, Claimant is not entitled to reimbursement of the cost of Dr. Pelicci's deposition.

■ Section 440(a) of the Act, 77 P.S. § 996(a),[8] authorizes an award of litigation costs to a claimant who prevails in whole or in part. Section 440(a) provides, in relevant part, as follows:

In any contested case where the insurer has contested liability in whole or in part, ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been· finally determined in whole or in part shall be awarded, in addition to the ·award for compensation, a reasonable sum for costs incurred for .attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time · to attend the proceedings. . . . ·

77 P.S. § 996(a). In order to be awarded litigation costs, the claimant must prevail on an issue· that was contested in the litigation before the WCJ. *Reyes v. Workers' Compensation Appeal Board (AMTEC),* 967 A.2d 1071, 1078 (Pa.Cmwlth.2009).

Here, the WCJ awarded Claimant only a portion of his litigation costs, stating as follows:

Claimant has incurred· litigation expenses in the amount of $3,067.03, which will be approved but for the ·deposition fee of Dr.· Pelicci in ·the amount of $2,000.00 as his deposition is·being rejected.

WCJ Decision, June 10, 2013, at 6; Finding of Fact No. 18.

This was .an error. Claimant is entitled to be reimbursed for all of his litigation costs, including Dr. Pelicci's. deposition fee. The characterization of .Claimant's petition as a review petition apparently caused confusion. Claimant filed a claim petition, not a review petition. He was required to do so. because Employer. refused to accept liability for any work. injury. At the first two WCJ hearings,. Employer continued to contest all aspects .of the claim including .whether any injury had occurred. To support his claim petition, Claimant scheduled Dr. Pelicci's deposition on May 30, 2012, and prepaid Dr. Pelicci's deposition fee. Employer does not dispute these points. The deposition was set for July 19, 2012.

On July 19, 2012, four months after litigation on the claim petition began, Employer issued an NCP recognizing liability for a work injury. The NCP was stamped received by the Bureau of Workers' Compensation at 12:55 p.m., a mere 35 minutes before the 1:30 p.m. start of Dr. Pelicci's deposition. There is no .evidence that Claimant was. aware,. before or during Dr. Pelicci's deposition, that Employer had issued this NCP. Dr. Pelicci testified that Claimant sustained a work injury, including the L2–3–4 transverse process fractures.

The occurrence of a work injury was an issue litigated before the WCJ. The fact that Employer issued an NCP just prior to Dr. Pelicci's scheduled· deposition time, for

**8.** Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended.*

which Claimant had already paid, does not transform the entirety of the litigation into a review petition.[9] When Claimant scheduled and paid for Dr. Pelicci's deposition, he needed medical expert testimony to prove that he sustained any work injury, even the L2–3–4 transverse process fractures. Dr. Pelicci testified on an issue that was being contested and upon which Claimant prevailed by having Employer issue an NCP during the course of the litigation. Thus, the fact that the WCJ ultimately ruled against Claimant with regard to other injuries not listed on the NCP is irrelevant to Claimant's entitlement to his litigation costs. What is more, on remand, Claimant could still succeed on his claim for a thoracic injury. In any event, regardless of the outcome of the remand, Claimant is entitled to be reimbursed by Employer for the $2,000 cost of Dr. Pelicci's deposition.

In sum, the Board erred in affirming the denial of Claimant's petition in light of the WCJ's failure to address the crucial issue of whether the work injury includes a thoracic injury. Further, Claimant is entitled to be reimbursed for the cost of Dr. Pelicci's deposition.

Accordingly, the portion of the Board's order affirming the WCJ's disallowance of the $2,000 cost for Dr. Pelicci's deposition is reversed. Additionally, the order of the Board affirming the WCJ's denial of Claimant's petition to add injuries to the NCP is vacated with respect to the alleged thoracic injury and the matter is remanded for the WCJ to render specific findings of fact and conclusions of law on that issue.

**9.** This differentiates this case from *Reyes.* In *Reyes,* the claimant filed a claim petition for injuries he sustained in an automobile accident. At the first WCJ hearing and well before the claimant deposed his medical expert, the employer specified that it did not dispute

**ORDER**

AND NOW, this 28th day of July, 2015, the order of the Workers' Compensation Appeal Board dated September 16, 2014, in the above-captioned matter is hereby REVERSED in part with respect to litigation costs, VACATED in part with respect to the alleged thoracic injury and AFFIRMED in all other respects, and the matter is REMANDED for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

some work injury occurred; rather, it disputed the extent of the injury and the existence of any disability. The parties litigated these issues and the claimant was not successful. As a result, this Court held that the claimant was not entitled to his litigation costs.