Layne Sabo, : 
              Petitioner : 
               : 
         v. :   No. 1080 C.D. 2024
               : 
Johnstown Wire Technologies :   Submitted: June 3, 2025
and UPMC Health Benefits, Inc. : 
(Workers' Compensation Appeal : 
Board), : 
              Respondents : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: July 15, 2025

       In this workers' compensation case, Layne Sabo (Claimant) petitions for review from the July 30, 2024 order of the Workers' Compensation Appeal Board (Board), which affirmed the August 2, 2023 decision of Workers' Compensation Judge William Gallishen (WCJ). The WCJ granted in part and denied in part Claimant's claim petition, in which he sought workers' compensation (WC) benefits pursuant to Section 301(c)(1) of the Workers' Compensation Act (Act)[1] for a right shoulder injury allegedly sustained while working for Johnstown Wire Technologies, Inc. (Employer).[2]

       In this Court, Claimant contends that the Board erred in affirming the WCJ's determinations that (1) Claimant's right shoulder dislocation and anterior labral

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

[2] As noted by the WCJ, Employer is at certain places in the record referred to as "Liberty Wire Johnstown." (WCJ Decision at 5 n.1.)

tear were not caused by Claimant's work incident on March 6, 2021, and (2) Claimant was entitled to recover only those litigation costs associated with obtaining medical records of Claimant's initial diagnostic treatment on March 6, 2021.

Upon review, we affirm in part, vacate in part, and remand for further proceedings.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The material facts and procedural history of this case, with limited exceptions, are straightforward, largely undisputed, and may be summarized as follows based on the WCJ's uncontested findings. On March 6, 2021, Claimant suffered a right shoulder or upper arm injury while pulling wire out of a machine in the course and scope of his employment with Employer. Claimant immediately experienced some pain in his right shoulder and upper right arm, but nevertheless finished his shift, working an additional 15 or 20 minutes. Claimant did not immediately advise Employer of the injury because it did not feel severe, and he believed it probably was a pulled muscle.

After completing his shift, Claimant drove himself home, where he showered, and then sat down to eat, relax, and watch television. Claimant did not lift any heavy items while at home or engage in any strenuous activity. His pain nevertheless was ongoing and gradually increasing, and at some point, he noticed a divot on his arm or shoulder. Approximately 45 minutes after the work incident, Claimant's pain became severe, he lost mobility in his right arm, and his mother transported him first to an urgent care facility and then to a hospital emergency department for diagnosis and treatment. While en route, Claimant advised Employer of the injury and vomited on two occasions due to the severity of the pain.

2

At the emergency department, Claimant was diagnosed with a right shoulder dislocation, and medical staff put the shoulder back in place while Claimant was under sedation. The same day, Employer, through its insurer UPMC Health Benefits, Inc. (Insurer) (with Employer, Respondents), issued a Notice of Compensation Denial in which Employer denied that Claimant suffered a compensable injury at work that day.

Claimant filed a claim petition on May 27, 2021, in which he asserted a compensable right shoulder injury and sought total disability benefits from March 6, 2021, and ongoing, together with payment of medical bills and counsel fees.[3] Several hearings were held before two WCJs[4] at which Claimant, Claimant's mother, Claimant's sister, and two medical experts testified. Pertinent to the issues presented by Claimant here, the medical experts testified as follows. Claimant's treating physician and medical expert, Dr. David Bizousky, is a Board-certified orthopedic surgeon. Dr. Bizousky first saw Claimant for treatment on March 26, 2021. (WCJ Finding of Fact (F.F.) 7(b).) Dr. Bizousky reviewed Claimant's medical records, including magnetic resonance imaging (MRI) records, and performed a physical examination. Dr. Bizousky diagnosed Claimant with a dislocated right shoulder and anterior labral tear, on which he performed repair surgery on April 16, 2021. (F.F. 7(c),

---

[3] Respondents filed a joinder petition (Joinder Petition) on August 11, 2022, seeking to add Puff Super Value Inc. (Additional Employer) as an additional employer based on the allegation that Claimant sustained another work injury on June 4, 2022, while working for Additional Employer. Respondents contended that, to the extent that Claimant in fact suffered from any ongoing work-related injury, Additional Employer was liable for any compensation or medical benefits due to Claimant for such injury on or after June 4, 2022. The WCJ bifurcated consideration of the Claim Petition and Joinder Petition, and any questions regarding whether Additional Employer is partially or wholly responsible for payment to Claimant of any WC benefits is not now before us.

[4] The matter initially was assigned to WCJ David Cicola, who conducted several hearings prior to his retirement. WCJ William Gallishen thereafter was assigned to the case, completed the record, and issued the decision that is the subject of Claimant's petition in this Court.

3

(d).)  Dr. Bizousky saw Claimant for the last time on February 9, 2022, at which time Claimant complained of ongoing pain, physical limitations, and weakness.  Dr. Bizousky also observed a "winged scapula" on Claimant's right shoulder.  (F.F. 7(e), (f).)

Dr. Bizousky ultimately opined that (1) Claimant sustained a right shoulder dislocation and anterior labral tear as a result of the work injury on March 6, 2021, (2) Claimant received reasonable and necessary medical treatment for the injury, and (3) Claimant was unable to perform his pre-injury work for Employer.  (F.F. 7(h).)  Dr. Bizousky indicated that it was "plausible" that the dislocation and labral tear could have occurred while Claimant was at work, with the pain increasing later at home.  He also indicated that almost all of his patients who had experienced shoulder dislocations had immediate and severe pain, which was not Claimant's experience.  Dr. Bizousky admitted this was "unusual."  (F.F. 7(i), (j).)  He further acknowledged that Claimant's medical records indicated prior shoulder injuries.  (F.F. 7(k), (o).)

Employer presented the testimony of Dr. Steven Kann, who also is a board-certified orthopedic surgeon.  Dr. Kann performed an independent medical examination (IME) of Claimant on November 20, 2021, as part of which he reviewed Claimant's medical records, obtained a medical history from Claimant, and performed a physical examination.  (F.F. 9(a), (b).)  Claimant explained to Dr. Kann the work incident on March 6, 2021, after which he felt right shoulder pain, finished his shift, went home, showered, ate, and sat on the couch.  Claimant told Dr. Kann that while he was seated at home, he leaned forward and noticed significantly increased pain in his shoulder and immobility in his arm.  (F.F. 9(c).)  Dr. Kann agreed with Dr. Bizousky that Claimant suffered a right shoulder dislocation and attendant injuries that required surgery.  (F.F. 9(g).)

4

Dr. Kann noted that individuals who suffer shoulder dislocations experience immediate, severe pain and arm immobility. (F.F. 9(i).) Given that Claimant did not experience these symptoms and proceeded to drive himself home, shower, and sit and eat, Dr. Kann opined that Claimant did not experience the dislocation at work. *Id.* Rather, although Dr. Kann did not opine that a specific event caused the dislocation, he explained that Claimant's symptoms of severe pain and arm immobility after reaching forward at home were consistent with a shoulder dislocation and that Claimant's reaching movement was consistent with the physical position that typically causes dislocations. (F.F. 9(j); Reproduced Record (R.R.) at 373, 381, 398-99, 418-419.)[5] Dr. Kann further opined that Claimant was fully recovered from the dislocation as of the date of the IME. (F.F. 9(k).)[6]

In support of his claim for litigation costs, Claimant presented the records and related bills from his March 6, 2021 emergency department visit, where x-rays were performed and his shoulder was put back into place. (F.F. 16, 18.)

The WCJ ultimately credited Claimant's testimony that, as a result of the March 6, 2021 work incident, he suffered the onset of pain at the top of his right arm where it connects to his shoulder. As to Claimant's credibility, the WCJ found:

> [ ] I find [Claimant's] testimony to be credible in part, [and] not credible in part. I find credible that portion of his testimony for which he was consistent in his reporting or [that] comports with common sense, such as the occurrence

---

[5] We note that Claimant's Reproduced Record does not comply with Pennsylvania Rule of Appellate Procedure 2173 in that it is not paginated using a "1a, 2a, 3a" format.

[6] Claimant's Mother, Coleen Carpenter-Duman, and Claimant's sister, Cheyenne Sabo, also testified on Claimant's behalf. The WCJ summarized their testimony and found much of it to be either not relevant or not credible. (F.F. 10, 11, 15.) Claimant also testified on three additional occasions. (F.F. 12-14.) This additional testimony, however, was either discredited by the WCJ or is immaterial to the issues in this appeal.

5

of the injury, the perception that it was only a muscle pull, and his continuing pain.

(F.F. 23.) The WCJ discredited Claimant's testimony regarding certain details he provided to Dr. Kann during the IME and his later testimony regarding his pain levels and activity after arriving home on March 6, 2021, which the WCJ found to be inconsistent with Claimant's prior testimony about the same matters. (F.F. 23(a)-(b).)

The WCJ accordingly found that "Claimant has shown that he suffered some injury to his right upper arm and/or right shoulder due to his work activities while in the course of his employment with [ ] Employer." (F.F. 24.) Nevertheless, the WCJ also found that Claimant did not establish by a preponderance of the evidence that he suffered a work-related dislocated right shoulder and/or labral tear. (F.F. 25.) Regarding the medical testimony, the WCJ found credible Dr. Kann's testimony that Claimant's initial experience of modest pain was inconsistent with a shoulder dislocation and that the arm motion Claimant demonstrated as causing the injury was not of the kind that would cause a dislocation. (F.F. 25(a)-(c).) The WCJ further found that Dr. Kann's opinion was consistent with the WCJ's findings that Claimant finished his shift, drove himself home, showered, and attempted to relax before he experienced, approximately 45 minutes after the work incident, the intense pain associated with a shoulder dislocation. (F.F. 25(d)-(e).)

Regarding Dr. Bizousky's testimony, the WCJ found it to be mostly credible except for his testimony as to causation. The WCJ found that Dr. Bizousky did not adequately acknowledge or explain the mild nature of Claimant's initial shoulder pain or Claimant's physical capabilities immediately after the work incident. The WCJ therefore discredited Dr. Bizousky's opinion that the dislocation happened at work. (F.F. 25(h)(1)-(4).) Crediting Dr. Kann's testimony in this regard, the WCJ found that, "while Claimant suffered some right upper arm and/or right shoulder injury,

6

[ ] Claimant has not proven by a preponderance of the evidence that this caused a shoulder dislocation and labral tear." (F.F. 25(j).)

In sum, although the WCJ credited Claimant's medical testimony establishing that he was unable to work due to a right shoulder dislocation and anterior labral tear, the WCJ further found that those injuries were not causally related to his work with Employer and, therefore, were not compensable. (F.F. 26.) Instead, the WCJ found that only an unspecified right upper arm or shoulder injury was compensable and that Employer was responsible only for the costs of medical treatment rendered on the day of injury. (F.F. 27; Conclusion of Law (COL) 3.) The WCJ accordingly awarded only those litigation costs associated with obtaining medical records regarding Claimant's initial diagnostic treatment on March 6, 2021, which totaled $18.87. (F.F. 29; COL 6.) Given Claimant's entitlement to only a small amount of medical benefits, the WCJ awarded no counsel fees. (F.F. 30; COL 7.)

Claimant appealed to the Board, arguing that the WCJ's decision was not supported by substantial evidence and was legally erroneous, particularly on the issue of causation. The Board affirmed, concluding that the WCJ's determination that Claimant sustained a work-related right shoulder injury but not a work-related dislocation and labral tear was supported by substantial evidence. (Board Op. at 11.) The Board further rejected Claimant's argument that the dislocation and labral tear, even if they did not occur at work, were the "natural and probable" result of the more minor shoulder injury that Claimant sustained during his shift on March 6, 2021. *Id.* The Board in this regard concluded as follows:

> Claimant's argument fails, however, as Claimant maintains that the WCJ credited his testimony and his mother's testimony. The WCJ did not credit that testimony and did not, as Claimant suggests, implicitly reject Dr. Kann's opinion relating the dislocation and tear solely to an incident

7

at home. A WCJ's credibility determinations must be viewed as a whole and may be overturned only if they are arbitrary and capricious, fundamentally dependent on a misapprehension of material facts, or otherwise so flawed as to be irrational. We discern no such material misapprehension or irrational flaw[ ] and determine no error in the partial grant of the [c]laim [p]etition.

(Board Op. at 12.)

As to recoverable litigation costs under Section 440(a) of the Act, 77 P.S. § 996(a), the Board concluded that the WCJ properly limited Claimant's recoverable costs to those associated with Claimant's medical treatment at the emergency department prior to receiving diagnoses of a shoulder dislocation and anterior labral tear. *Id.* at 13-16.

Claimant now petitions for review in this Court.

## II. ISSUES

In this Court, Claimant argues that (1) the Board erred in affirming the WCJ's determination that Claimant's disabling injury was not caused by the work incident that occurred on March 6, 2021;[7] and (2) the Board erred in affirming the

---

[7] To the extent that Claimant's arguments on this issue challenge the credibility determinations of the WCJ, we note that

it is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight. For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. As the ultimate fact-finder, the WCJ . . . is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational.

*Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

WCJ's determination that only the costs associated with obtaining records regarding Claimant's emergency room medical treatment were recoverable as litigation costs. Thus, the central question in this appeal that controls the others is whether the Board erred in affirming the WCJ's determination that Claimant did not carry his burden to establish that his disabling injury, a right shoulder dislocation and anterior labral tear, was causally related to the work incident on March 6, 2021.

## III. DISCUSSION[8]

### A. The Cause of Claimant's Disabling Injury

### 1. Applicable Legal Principals and the Parties' Arguments

In his first issue, Claimant does not fundamentally challenge the WCJ's findings and credibility determinations as to the events that occurred during and after his work shift on March 6, 2021. It also was not disputed by either medical expert, and the WCJ found, that Claimant sustained a disabling right shoulder dislocation and anterior labral tear. Claimant therefore argues that the WCJ's findings and the undisputed medical evidence in this case compel a conclusion that his disabling injury was caused by the work incident on March 6, 2021, and the WCJ erred as a matter of law in concluding otherwise. (Claimant Br. at 30-31.) Claimant insists that the WCJ did not, as the Board concluded, credit any opinion of Dr. Kann regarding what in fact "caused" his injury or make any findings in this regard. Thus, Claimant contends that,

___

[8] Our review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992). In determining whether findings are supported by substantial evidence, we view the evidence as a whole and in the light most favorable to the party that prevailed before the WCJ. *Williams v. City of Philadelphia (Workers' Compensation Appeal Board)*, 312 A.3d 976, 985 (Pa. Cmwlth. 2024).

9

even if an intervening event at Claimant's home did give rise to the shoulder dislocation, it still is compensable under our controlling causation principles.

Employer argues in response that the WCJ's findings are adequately supported by the evidence and are free of legal error. Employer contends that the WCJ was free to credit Dr. Kann's (and, to a large extent, Dr. Bizousky's) testimony that Claimant's minimal experience of pain immediately after the work incident and his conduct at home thereafter were inconsistent with the typical symptoms of a dislocated shoulder and anterior labral tear. Employer argues that there is substantial evidence in the record, together with competent and sufficient medical testimony from both Drs. Kann and Bizousky, that Claimant suffered only a minor injury or muscle pull at work on March 6, 2021, which was not in itself disabling or compensable. Although Claimant undisputedly suffered a dislocated shoulder and labral tear sometime while at home and later was treated for it, the WCJ did not err in concluding that those injuries were not causally related to Claimant's work injury. (Employer Br. at 12-20.)

A claimant seeking payment of workers' compensation benefits "has the burden of establishing the right to compensation and all of the elements necessary to support an award[.]" *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002). "An injury is compensable under Section 301(c)(1) of the Act only if the injury arises in the course and scope of employment and is causally related thereto." *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 861 (Pa. Cmwlth. 2011) (citation omitted). Thus, and pertinent here, a claimant bears the specific burden to establish "a causal relationship between a work-related incident and an alleged disability." *Rife*, 812 A.2d at 754.

There generally are two ways that a claimant may sustain his burden to prove causation. "Where there is no obvious causal connection between an injury and the alleged work-related cause, unequivocal medical evidence is necessary to establish that connection." *Boddie v. Workers' Compensation Appeal Board (Crown Distribution Center)*, 125 A.3d 84, 89 (Pa. Cmwlth. 2015) (citing *Budd Trailer Company, Inc. v. Workmen's Compensation Appeal Board (Behney)*, 524 A.2d 525, 527 (Pa. Cmwlth. 1987)). "An obvious relationship exists where the claimant's injuries immediately and directly or naturally and probably result from a work incident; in such cases, the fact finder is not required to depend alone, or at all, upon medical testimony to find the causal connection." *Metelo v. Workmen's Compensation Appeal Board (Old Original Bookbinders Restaurant)*, 642 A.2d 653, 655 (Pa. Cmwlth. 1994). In other words, "'unequivocal medical testimony is not necessary to establish what is apparent from the chain of events.'" *Id.* (quoting *Yellow Cab Co. v. Workmen's Compensation Appeal Board*, 390 A.2d 880 (Pa. Cmwlth. 1978)); *see also Budd Trailer Co., Inc.*, 524 A.2d at 527 ("Lay testimony is probative on the issue of physical injury and the cause of that injury only if the cause and effect are so immediate, direct and natural to common experience as to obviate any need for an expert medical opinion.") (quoting *Weaver v. Workmen's Compensation Appeal Board (Pennsylvania Power Co.)*, 487 A.2d 116, 118 (Pa. Cmwlth. 1985)).

This principle applies equally well where a claimant contends that his "disability is the natural and probable consequence of an injury[.]" *Metelo*, 642 A.2d at 655. An obvious causal relationship between a work injury and disability involves a "nexus that is so clear that an untrained layperson would not have a problem in making the connection between the injury and a disability. This discernment often involves a 'natural and probable' development . . . and could sometimes involve an

11

immediacy of occurrence such as an immediate back injury following heavy lifting." *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784-85 (Pa. Cmwlth. 1991). Pennsylvania courts consistently have held, for example, that there is an obvious connection between a work incident and a disabling injury where a claimant experiences pain contemporaneously with doing an act requiring force or strain, such as lifting an object. *See Davis v. Workmen's Compensation Appeal Board (United Parcel Service)*, 499 A.2d 703, 705 (Pa. Cmwlth. 1985).

Relevant in this case, "[w]here there is an intervening non-work injury, [the] claimant must then prove that his resultant disability was so immediately and directly connected with the prior work-related injury that it would naturally and probably result therefrom; that is to say, that the first accident was the proximate predisposing cause of the resultant disability." *Matlack, Inc. v. Workmen's Compensation Appeal Board (Zwald)*, 494 A.2d 510, 512 (Pa. Cmwlth. 1985) (quoting *GTE Sylvania v. Workmen's Compensation Appeal Board (Lydon)*, 458 A.2d 1050, 1051 (Pa. Cmwlth. 1983)); *see also Shoemaker by Shoemaker v. Workmen's Compensation Appeal Board (Jenmar Corp.)*, 604 A.2d 1145, 1147 (Pa. Cmwlth. 1992) ("[I]njuries unrelated to one's employment are compensable if they are the proximate result of prior work-related injuries."). In cases where the causal connection between an original, non-disabling work incident and a later disabling injury is not obvious in light of the circumstances, such as when the two events are significantly separated in time or a second traumatic incident occurs prior to the disability, the connection must be established by unequivocal medical testimony. *See, e.g., Budd Trailer Co., Inc.*, 524 A.2d at 527 (unequivocal medical evidence necessary to causally link non-disabling work incident to disabling injury given that three weeks passed

12

between the two and the disability occurred closely after a second, non-work-related trauma while the claimant was at home); *Bush Coal Co. v. Workmen's Compensation Appeal Board (Adams)*, 499 A.2d 730, 731 (Pa. Cmwlth. 1985) (claimant's medical expert testified that claimant's myocardial infarction suffered at work was the ultimate cause of his death, which occurred approximately four and one-half years later while claimant was engaged in a fist fight; claimant's death was the "proximate, natural, and probable result of the prior work-related myocardial infarction); *Topps Chewing Gum, Inc. v. Workmen's Compensation Appeal Board (Demich)*, 485 A.2d 1237, 1237-38 (Pa. Cmwlth. 1985) (claimant's medical expert testified that claimant's disability was caused by a prior, non-disabling, work-related back injury that ultimately caused a compensable herniated disc when claimant sneezed at home months later); *GTE Sylvania*, 458 A.2d at 1052 (claimant's medical expert testified that claimant's disability was caused by a work-related incident even though claimant did not become disabled from that injury until it was exacerbated while claimant was engaged in non-work-related activity approximately one month later).

## 2.    Analysis

The WCJ found that Claimant sustained an unidentified work-related injury to his right shoulder on March 6, 2021. The WCJ credited Claimant's original testimony regarding the circumstances that occurred before and after his work shift that day, wherein Claimant testified that he was pulling a wire in a wire machine when he felt pain where his right shoulder connects to his arm. The WCJ also credited Claimant's testimony that he continued to work for approximately 15-20 minutes, finished his shift, drove himself home, showered, ate, and relaxed on the couch, all the while still experiencing pain in his shoulder. At some point thereafter, which was approximately 45 minutes after the work incident, Claimant's pain became severe, and

13

he could not move his arm. Claimant then was transported by his mother to seek medical treatment. At the emergency department, Claimant was diagnosed with and treated for a right shoulder dislocation and anterior labral tear. The parties do not dispute these facts, and they are supported by substantial evidence in the record.

The WCJ also made credibility determinations regarding the medical testimony, in which he credited, to a degree, the causation testimony of Dr. Kann over that of Dr. Bizousky. Dr. Kann testified that Claimant's disabling injury did not occur at work but later at home, possibly when Claimant was reaching forward while relaxing on the couch. Dr. Kann testified, and the WCJ accepted, that Claimant's initial experience of mild pain, ability to drive himself home, and ability to shower and perform other normal activities were inconsistent with the symptoms of a shoulder dislocation. Dr. Bizousky agreed to a large extent on this point, but nevertheless opined that Claimant's dislocation and related injuries occurred during his work shift. We will not disturb the WCJ's findings and credibility determinations in this regard, as we find that they are adequately supported by substantial medical evidence. The WCJ was free to, and did, credit the testimony of Dr. Kann over Dr. Bizousky regarding whether Claimant's dislocation occurred at work on March 6, 2021. The WCJ did not, in this respect, make his own medical diagnosis. Rather, the WCJ concluded that Claimant's disability did not occur at the time of the incident on March 6, 2021, and, at least in that respect, was not causally related to Claimant's work with Employer.

However, that does not end our inquiry. As noted above, even assuming, as the WCJ found, that some intervening event gave rise to Claimant's disability, it nevertheless may still be compensable if it is the natural and probable consequence of the non-disabling work incident on March 6, 2021. As Claimant correctly points out, the WCJ made no findings in this respect, whether based on the opinions of the medical

14

experts, the testimony of the fact witnesses, or both. This was error. Moreover, the WCJ's crediting, in some respects, of Dr. Kann's testimony over that of Dr. Bizousky does not resolve this question, and the Board erred in concluding to the contrary. The WCJs findings and credibility determinations regarding causation are limited to a determination that the dislocation and anterior labral tear *did not occur at work*. The WCJ made no findings or credibility determinations with regard to whether the work incident, with or without intervening events or circumstances, in fact *caused* the disabling injury. This is particularly significant here given the undisputed facts that Claimant's right shoulder pain was constant and increasingly severe after his work injury, the dislocation symptoms manifested only 45 minutes later, and Claimant engaged in no intervening strenuous activities.

Section 422(a) of the Act, requires a WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decision." 77 P.S. § 834. The WCJ must make necessary findings of fact on all essential issues to permit review by the Board and this Court. *Boddie v. Worker's Compensation Appeal Board (Crown Distribution Center),* 125 A.3d 84, 90 (Pa. Cmwlth. 2015). Here, although the WCJ thoroughly reviewed the pertinent testimony and made detailed findings and conclusions regarding whether Claimant's disabling injury *occurred* at work, the WCJ made no findings, conclusions, or credibility determinations on the related and essential question of whether, notwithstanding the timing of the onset of the disability, it was causally related to Claimant's work injury as the natural and probable consequence of it. In such circumstances, "where the WCJ has failed to address a crucial issue," remand for specific findings and credibility determinations is warranted. *Id.*

15

## B.    Litigation Costs

Claimant next argues that the Board erred in affirming the WCJ's denial of Claimant's request for an award of litigation costs other than a portion of those incurred in obtaining medical records regarding Claimant's pre-diagnosis emergency department treatment on the day of the injury.  Claimant contends that the WCJ erred in limiting the award of litigation costs because Claimant was partially successful on his claim petition.

Section 440(a) of the Act authorizes an award of litigation costs to a claimant who prevails in whole or in part on his compensation claim.  It provides:

> In any contested case where the insurer has contested liability in whole or in part, . . . the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings. . . .

77 P.S. § 996(a).  To recover litigation costs, a claimant must be successful on a contested issue in the proceedings before the WCJ.  *Boddie*, 125 A.3d at 91 (citing *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1078 (Pa. Cmwlth. 2009)).  Further, the litigation costs awarded must relate to the contested issue on which the claimant prevailed.  *Jones v. Workers' Compensation Appeal Board (Steris Corp.)*, 874 A.2d 717, 722 (Pa. Cmwlth. 2005).  The determination of whether litigation costs are reimbursable and reasonable is one left to the discretion of the WCJ. *Id.* at 721 n.3, 722.

Given that we vacate and remand for further proceedings before the WCJ, we will not reach the question of costs at this juncture.  We nevertheless note the inherent contradiction in the WCJ's analysis in this regard.  As explained above, based

on an incomplete causation analysis, the WCJ found that Claimant's shoulder dislocation and labral tear were not related to his work injury. (F.F. 24, 26.) Yet, the WCJ awarded Claimant medical benefits and associated litigation costs for a portion of Claimant's emergency department visit on March 6, 2021, notwithstanding that the visit undisputedly related *only* to Claimant's dislocation and labral tear. (F.F. 27, 29.) We fail to see, based on current findings, how the WCJ could award costs related to an injury he found to be not work-related. This inconsistency should be revisited, as necessary, on remand.

## IV.    CONCLUSION

In sum, we affirm that portion of the Board's order affirming the WCJ's findings and conclusions regarding whether Claimant's disability occurred at work on March 6, 2021. We vacate, however, that portion of the Board's order that affirmed in total the WCJ's determination of causation and remand the matter for the WCJ to make additional findings and conclusions on that issue—specifically, whether Claimant has established, with or without expert medical evidence, that his disability was a natural and probable consequence of the work incident on March 6, 2021. The WCJ shall thereafter issue an amended decision incorporating such additional findings and conclusions and addressing, if and as necessary, the extent of Claimant's disability and whether and to what extent benefits, litigation costs, and attorneys' fees are owed.

_____
PATRICIA A. McCULLOUGH, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Layne Sabo,
        Petitioner

        v.

Johnstown Wire Technologies
and UPMC Health Benefits, Inc.
(Workers' Compensation Appeal
Board),
        Respondents

:
:
:
:
:
:
:
:
:
:
:
:

No. 1080 C.D. 2024

## ***ORDER***

AND NOW, this 15th day of July, 2025, the July 30, 2024 order of the Workers' Compensation Appeal Board is hereby AFFIRMED, in part, and VACATED, in part, as set forth in the foregoing memorandum opinion. The matter is REMANDED to the Board for further remand to the WCJ for further proceedings consistent herewith.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge